**Jon Benoit GUILBEAU, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–04–00691–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 23, 2006.

---

**158**

George McCall Secrest, Jr., Bennett & Secrest, L.L.P., Houston, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, William J. Delmore III, Assistant District Attorney, Houston, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

SHERRY J. RADACK, Chief Justice.

Appellant, Jon Benoit Guilbeau, pleaded not guilty to murder, and a jury convicted appellant, assessed punishment at 45 years' imprisonment, and imposed a fine of $10,000. Appellant contends the trial court erred in (1) failing to instruct the jury on the use of deadly force in self-defense, (2) admitting evidence of extraneous offenses, (3) refusing to provide the jury with an instruction to disregard the extraneous offenses after denying the instruction on self-defense, and (4) failing to instruct the jury on sudden passion at the punishment phase of trial. We reverse and remand for a new trial.

## BACKGROUND

On May 31, 2003, the deceased, Galen "Sparky" Sczech and Patrick Smoley, a friend, went out drinking at Sam's Boat. Around 2:00 a.m., Sczech and Smoley left the bar and walked toward their vehicles. While walking to their vehicles, another vehicle, driven by appellant, backed up "pretty fast" and nearly ran into Sczech and Smoley. Both individuals hit the side of the car with their hands and yelled, "pay attention, motherf* * *er" and continued walking.

Thinking he had hit another vehicle, appellant got out to inspect for damage. After realizing it was not a vehicle, appellant yelled, "Don't hit my car!" Sczech and Smoley were about ten to fifteen feet from appellant's vehicle when they heard appellant. Sczech turned around and began to move towards appellant. In an effort to block Sczech's advances, Smoley stepped in front of Sczech, but Sczech shoved him out of the way.

Although the evidence differs as to what happened next and what words were exchanged between Sczech and appellant, appellant testified that, after this initial confrontation, Sczech and Smoley walked away towards their vehicle. Appellant testified that he got back in his vehicle and grabbed his pistol because he was planning on getting gas and was unfamiliar with the area. Appellant claimed he was unable to drive away because of traffic in the parking lot, so he got out of his car to speak with his brother, who was parked in a nearby parking spot. While discussing the route home from the bar with his brother, appellant heard a loud "FU," turned around and saw Sczech coming towards him "very fast." Appellant testified he

couldn't make it back to his vehicle, so he pulled his gun from his pocket and pointed it at Sczech. Sczech raised his hands in a supinated position and asked, "What the F[sic] you going to do with that?" Sczech took two more steps towards appellant, and, fearing he would take the "beating of a lifetime," appellant shot and killed Sczech. Patrick Smoley recounted a different version. He, along with two other witnesses, testified that when appellant got out of his vehicle the first time, appellant already had his gun drawn and pointed at Szech. He testified that when Szech saw the gun, Szech began to turn away, and appellant shot him.

## SELF–DEFENSE INSTRUCTION

■ In his first point of error, appellant complains the trial court erred in failing to instruct the jury on the use of deadly force in self-defense. Specifically, he contends there was at least some evidence to support such an instruction. We agree.

Section 9.31 of the Texas Penal Code states in pertinent part

(a) Except as provided in Subsection (b), a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

(b) The use of force against another is not justified:

(1) in response to verbal provocation alone.

TEX. PEN.CODE ANN. § 9.31 (Vernon 2003).

Section 9.32, which appellant claims is applicable, states in pertinent part

(a) A person is justified in using deadly force against another:

(1) if he would be justified in using force against the other under Section 9.31;

(2) if a reasonable person in the actor's situation would not have retreated; and

(3) when and to the degree he reasonably believes the deadly force is immediately necessary:

(A) to protect himself against the other's use or attempted use of unlawful deadly force.

*Id.* § 9.32.

■ If evidence raises the issue of self-defense, the defendant is entitled to have it submitted to the jury, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense. *Hamel v. State,* 916 S.W.2d 491, 493 (Tex.Crim.App.1996); *Dyson v. State,* 672 S.W.2d 460, 463 (Tex. Crim.App.1984). The defendant's testimony alone may be sufficient to raise the defensive theory requiring a charge. *Hayes v. State,* 728 S.W.2d 804, 807 (Tex. Crim.App.1987); *Dyson,* 672 S.W.2d at 463; *Warren v. State,* 565 S.W.2d 931, 934 (Tex.Crim.App.1978). In determining whether the testimony of a defendant raises an issue of self-defense, the truth or credibility of the defendant's testimony is not at issue. *Rodriquez v. State,* 544 S.W.2d 382, 383 (Tex.Crim.App.1976); *Halbert v. State,* 881 S.W.2d 121, 124 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd). A reviewing court must view the evidence or testimony in a light most favorable to the appellant. *Dyson,* 672 S.W.2d at 463. If such testimony or other evidence viewed in a favorable light does not establish a case of self-defense, an instruction is not required. *Id.*

■ In the instant case, since appellant used deadly force, there must be some evidence to satisfy the requisites of sections 9.31 and 9.32 of the Texas Penal Code. *Id.* Thus, there must be some evidence to show that appellant reasonably

believed that use of deadly force was immediately necessary to protect himself against a use of unlawful deadly force by Sczech, and that a reasonable person in appellant's position would not have retreated. *Id.; Starks v. State*, 127 S.W.3d 127, 132 (Tex.App.-Houston [1st Dist.] 2003, pet. dism'd). In the absence of evidence of use or attempted use of deadly force by Sczech, the section 9.32 defense is not available. *Preston v. State*, 756 S.W.2d 22, 25 (Tex.App.-Houston [14th Dist.] 1988, pet. ref'd). However, it is not necessary that a jury find that Szech was using or attempting to use unlawful deadly force against appellant for appellant's right of self-defense to exist. *Hamel*, 916 S.W.2d at 493. A person has the right to defend himself from apparent danger to the same extent as he would if the danger were real. *Id.* The term "reasonably believes" in section 9.32 encompasses the traditional holding that a suspect is justified in defending against danger as he reasonably apprehends it. *Id.* (citing *Semaire v. State*, 612 S.W.2d 528, 530 (Tex. Crim.App.1980)).

"Deadly force" means force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury. TEX. PEN.CODE ANN. § 9.01(3) (Vernon 2003). "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. *Id.* § 1.07(a)(46) (Vernon Supp.2005).

In appellant's brief, he lists multiple points that he claims support an instruction on self-defense: 1) the events unfolded quickly in a poorly lit parking lot; 2) both Sczech and Smoley were complete strangers to appellant, but were willing to have an altercation to confront him; 3) both Sczech and Smoley were intoxicated, and Sczech was extremely intoxicated; 4) both men were very large; 5) appellant was younger and smaller; 6) Sczech and Smoley appeared to be "tough,"; 7) both were angry; 8) both were acting aggressively; 9) both were being confrontational; 10) both were using loud, threatening language that was not only particularly profane, but was intended to provoke; 11) both were found by appellant to be intimidating; 12) both intentionally struck appellant's vehicle; 13) Smoley was unable to prevent Sczech from advancing toward appellant; 14) Sczech broke away from Smoley's grasp, advanced "menacingly" toward appellant, and taunted appellant by "stabbing" at appellant's chest with his finger; 15) after walking away the first time, both men advanced quickly towards appellant after appellant moved away from his vehicle; 16) appellant was scared and believed he would take the "beating of a lifetime"; 17) after appellant pulled his gun and told Sczech to "get back," Sczech took two steps towards appellant; 18) appellant shot Sczech to keep him from "harming appellant"; 21) appellant hesitated before he shot Sczech; and 22) appellant panicked and was not thinking rationally.

■ At trial, when asked why appellant pulled his gun and shot Sczech, he testified that he "was going to take the beating of a lifetime," that he wanted to "keep [Sczech] from harming him," that he knew they would "give [him] a beating," and that it "was the only thing [he] could do at that time to save [himself]." Given the circumstances surrounding the incident, along with appellant's testimony, we conclude appellant offered some evidence to raise an issue as to whether appellant reasonably believed that use of deadly force was immediately necessary to protect himself against an infliction of serious bodily injury by Sczech. The truthfulness and

reasonableness of appellant's belief is a question of fact for the jury to decide. *Halbert,* 881 S.W.2d at 125.

 Regarding the possibility of retreat, some evidence of the inability to retreat is all that is necessary. *Id.* Here, appellant testified that he began walking towards his car when Szech came at him the second time. Because Szech was coming at him "fast," appellant testified there was not enough time to get in his car and shut the door. When appellant realized he could not get away, he pulled his gun. There is, thus, some evidence that would support a belief that retreat was not a reasonable option.

Viewing the evidence in appellant's favor, we conclude there was some evidence presented to raise the issue of self-defense. Accordingly, appellant was entitled to a jury instruction on self-defense by use of deadly force under section 9.32 of the Texas Penal Code, and the trial court erred in failing to submit that instruction to the jury.

Having concluded that the trial court erred by failing to instruct the jury on appellant's right to use deadly force, we must determine whether the error harmed appellant. *Id.* at 126. Because appellant properly preserved error by objecting to the charge and by submitting his proposed jury instructions, we must reverse the conviction and order a new trial if appellant suffered any actual harm, regardless of degree. *Hayes,* 728 S.W.2d at 808. To determine if there is any harm, we must weigh the degree of harm in light of the entire jury charge, state of the evidence, counsel's arguments, and any other relevant information revealed by the trial record as a whole. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984).

The record shows that appellant's entire defense rested on his right to defend himself from Szech, a person he admittedly shot and killed. Both the prosecution and appellant discussed the law regarding self-defense during voir dire, and appellant began his voir dire by stating that "this case is about self-defense. It's about the right that everybody in this room has to not become a victim." Appellant pursued the theory of self-defense in his opening statements and introduced testimony on the issue. The State even stated they had no objection to the charge. When the case was submitted to the jury, the first question posed by the jury was "[w]hy was the charge of self defense thrown out?" We conclude that the error in the denial of the jury instruction on self-defense actually harmed appellant. We sustain appellant's first issue.

## CONCLUSION

Because we find reversible error, we do not address appellant's remaining points of error. Accordingly, we reverse the judgment of the trial court and remand for a new trial.