**Ashton Joel CARMEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–07–00069–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 20, 2008.

Discretionary Review Refused
April 22, 2009.

Perry R. Stevens, Angleton, TX, for Appellant.

Jeri Yenne, Criminal District Attorney, David Bosserman, Assistant Criminal District Attorney, David A. Dowdy, Brazoria County District Attorney, Angleton, TX, for Appellee.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

ELSA ALCALA, Justice.

Appellant, Ashton Joel Carmen, appeals from a judgment convicting him for the murder of his father, Reginald Carmen. *See* TEX. PENAL CODE ANN. § 19.02 (Vernon 2003). Appellant pleaded not guilty, was found guilty by the jury, and assessed 50 years in prison by the jury. In his sole issue, appellant contends the trial court erred by denying his request for a jury instruction on self-defense. We conclude the trial court committed harmful error by refusing to instruct the jury on the law of deadly force in defense of person. *See* TEX. PENAL CODE ANN. § 9.32 (Vernon Supp.2008). We reverse and remand for a new trial.

### Background

Appellant was born with cocaine in his system, the child of a mother addicted to the substance and of a father, Reginald Carmen, who was absent for the first years of appellant's life. Carmen began living with appellant when appellant was in the first or second grade. Within a few months of moving in with appellant, Carmen struck appellant with a belt over 70

times while appellant was naked below the waist, causing his hospitalization and the intervention of Children's Protective Services (CPS). CPS temporarily removed appellant from Carmen's custody, but appellant was returned to Carmen after Carmen went to an anger management class.

According to appellant, CPS never intervened again, despite two later referrals for excessive force. Upon reunification of appellant and Carmen, the physical assaults resumed, with Carmen often striking the lower part of appellant's shoulders, his back, the lower part of his thighs, and using a fist to strike his face, back, chest, stomach, and arm. Appellant was struck by Carmen almost every day in the form of a "whooping" or a "beating." For a whooping, Carmen would tell appellant to assume the position, which meant that appellant was to lean over the bed or couch to receive "licks." During the beatings, Carmen would slap and punch appellant, and sometimes wrap a belt around the neck of appellant. Carmen also deprived appellant of food by allowing appellant only to have water for several days at a time. Appellant told his mother about the repeated assaults and his thoughts of suicide. Appellant said that on a couple of occasions Carmen threatened to kill him. Appellant described a conversation with Carmen that occurred on one occasion after appellant broke into Carmen's bedroom. Carmen told appellant that if he took his property, he would treat him like a thief and kill him.

According to appellant, on the day Carmen died, appellant broke the window to Carmen's bedroom to search for money because he was planning to run away. During the search of Carmen's bedroom, appellant found a loaded gun. Appellant said he "most definitely" knew that Carmen was going to kill him for breaking into the bedroom. When Carmen arrived home with groceries, Carmen at first told appellant to assume the position but then said instead that they were going to "up the ante tonight." Appellant said he understood Carmen's threat to mean that "was going to be worse than just the beatings he had been giving me, as far as ... punching me or ... slapping me or hitting me with ... other objects. He made it seem like it was going to be worse." In response to the threat by Carmen, appellant ran down the stairs to Carmen's room and got the gun. When the appellant approached Carmen, Carmen threw a milk jug and a large soda bottle at appellant, striking him on the shoulder. At that point, Carmen came toward appellant. Appellant pointed the gun at Carmen, but Carmen "didn't stop for a second." Appellant testified that because Carmen "kept on coming," he shot the gun. Appellant explained that the did not think he could run from Carmen "seeing as the distance he was from me because if I would have ran out the front door, he would have ... caught me before I would have gotten that far." Appellant explained that he "was terrified," fearing that "something bad was going to happen" because "[Carmen] had already warned [appellant] about what actions [Carmen] would take if [appellant] did something like that."

Appellant shot the gun five times, with three rounds entering the Carmen's back. Appellant never called for an ambulance or police, but remained at the house for about two hours, until he left in Carmen's car.

At trial, appellant admitted that he previously read the owner's manual to Carmen's gun to learn how to shoot it and previously practiced shooting the gun. Also at trial, the State presented evidence from one of appellant's friends, Justin Golden, who testified that appellant showed him a gun seven months before the shooting, and told him that he planned to

shoot Carmen because he no longer wanted to live by Carmen's rules. Furthermore, appellant's mother denied knowledge of any abuse.

### Preservation of Error

■ The State contends error is not preserved because appellant "failed to specify the particular self-defense instruction he desired." We conclude that error was preserved because, under the circumstances before the court, appellant's objection to the omission of "self-defense" from the charge was specific enough for the trial court to be placed on notice that he was requesting the charge of deadly force in defense of one's person. The self-defense request could only have meant, under the circumstances of this case, a request for an instruction concerning self-defense with use of a deadly weapon or deadly force, as it is commonly referred to, or deadly force in defense of one's person, as it is properly called in the Texas Penal Code.

■ A defendant preserves error if the requested charge is specific enough to put the trial court on notice of the omission or error in the charge, and the requested charge need not be "in perfect form" but only sufficient enough to bring the request to the trial court's attention. *Chapman v. State*, 921 S.W.2d 694, 695 (Tex.Crim.App.1996). "'Magic words' are not required; a complaint will be preserved if the substance of the complaint is conveyed to the trial judge." *Bennett v. State*, 235 S.W.3d 241, 243 (Tex.Crim.App. 2007). An imperfect objection is sufficient to preserve error "if the record indicate[s] that the trial judge understood appellant's request to encompass the matters about which appellant now complains." *Id.* at n. 9 (citation omitted).

Here, a review of the record shows that the trial court must have actually understood that appellant was requesting a charge of deadly force in defense of one's person, for two reasons. *See id.* First, because the Court of Criminal Appeals uses the term "self-defense" when it is referring to the term "deadly force in defense of one's person," attorneys and judges in the State also interchange the terms. *See, e.g., Ferrel v. State*, 55 S.W.3d 586, 591–92 (Tex.Crim.App.2001) ("The State argues ... that Ferrel was not entitled to a jury instruction on self-defense because there was no evidence that McManus used or attempted to use unlawful deadly force. The State is essentially arguing that Ferrel was not entitled to a self-defense instruction under § 9.32(a) of the Penal Code."); *Hamel v. State*, 916 S.W.2d 491, 494 (Tex.Crim.App. 1996) (holding Hamel was "entitled to a jury instruction on self-defense" because testimony "raised the issue of self-defense" since Hamel said "he believed deadly force was immediately necessary to protect himself against Charlie's attempted use of deadly force"); *Riddle v. State*, 888 S.W.2d 1, 7 (Tex.Crim.App.1994) (holding Riddle "was not entitled to an instruction on self-defense" because "a reasonable person would have retreated without using deadly force"); *Coble v. State*, 871 S.W.2d 192, 202 (Tex.Crim.App.1993) ("[A]ppellant contends the trial court erred in not submitting a jury instruction on self-defense.... The use of deadly force in self-defense is only justified if the use of non-deadly force is justified."); *Martinez v. State*, 775 S.W.2d 645, 646–48 (Tex.Crim. App.1989) (holding evidence failed to raise issue of "self-defense by deadly force" after discussing that "an instruction on self-defense" is not precluded by Martinez's denial of any intent to kill complainant); *Bennett v. State*, 726 S.W.2d 32, 38 (Tex. Crim.App.1986) (rejecting "the contention that the trial court's instruction improperly limited appellant's right to self-defense"

in holding that instruction on deadly force in defense of one's person was proper); *Werner v. State,* 711 S.W.2d 639, 644–45 (Tex.Crim.App.1986) ("He ... could not have testified that he reasonably believed it necessary to shoot the deceased in order to defend himself against the deceased's use or attempted use of deadly force.... Be that as it may, even if the self-defense issue was validly before the jury the proffered testimony was still immaterial."); *Dyson v. State,* 672 S.W.2d 460, 462 (Tex. Crim.App.1984) (upholding exclusion of instruction on deadly force in defense of one's self by determining Dyson "was not entitled to an instruction on self-defense" due to provocation by Dyson).

Like the Court of Criminal Appeals, we have also used the terms interchangeably. *See Guilbeau v. State,* 193 S.W.3d 156, 159, 161 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd) (reversing conviction because "appellant was entitled to a jury instruction on self-defense by use of deadly force" since "there was some evidence presented to raise the issue of self-defense"); *Halbert v. State,* 881 S.W.2d 121, 124 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd) (reversing conviction due to failure to instruct jury on deadly force in defense of one's self based on point of error asserting that court erred by not instructing jury "on self-defense when appellant had presented self-defense evidence during trial and requested such an instruction"). It appears the reason why these terms are frequently interchanged by justices, judges and attorneys is because the primary difference between deadly force in defense of one's self and self-defense is the deadly force. *Compare* TEX. PENAL CODE ANN. § 9.31 (Vernon Supp.2007) (entitled "Self–Defense"), *with id.* § 9.32 (entitled "Deadly Force in Defense of Person"). Attorneys and judges familiar with decisions from state appellate courts understand that the shorthand term "self-defense" is usually all that is needed to convey that the defendant is asserting the defense of one's self, either with deadly force when complainant died or suffered serious bodily injury, or without deadly force when no death or serious bodily injury occurred.

Second, an examination of the record shows that the trial court must have been aware that appellant was referring to the defense of deadly force in defense of one's self when he requested the charge of self-defense. In deciding whether the trial court was aware of the requested instruction, it is appropriate to examine the context of the evidence at the trial and the issues before the trial court. *See Rogers v. State,* 105 S.W.3d 630, 632–41 (Tex. Crim.App.2003). In *Rogers,* to explain why the trial court did not understand that the request for an accident instruction was actually a request for an instruction on voluntary act, the Court of Criminal Appeals stated:

*It is not at all evident from the record* that the trial judge understood that appellant really wanted an instruction on voluntary conduct. In fact, the record suggests that the trial judge reasonably assumed that appellant wanted an instruction on the lack of the required intent. Immediately before the State began its cross examination of appellant, the trial judge ruled that the State could offer extraneous offense evidence "to rebut the defensive theory of self-defense and to rebut the defensive theory of accident" (i.e., lack of intent to harm). *Moreover, the evidence at trial was not such that it necessarily would have put the trial judge on notice that appellant wanted an instruction on voluntary conduct.* A statement that a defendant did not intend to pull the trigger "cannot be plucked out of the record and examined in a vacuum." If appellant wanted jury instructions on what are generally

inconsistent defensive theories, then it was incumbent upon him to tell the trial court exactly he wanted.

*Id.* (Emphasis added). Therefore, in deciding whether the trial court understood the request for an instruction, we must examine the record for statements by the trial court that reflect what its understanding was, the general theme of the defense evidence, the various defensive theories presented at the trial, and anything else that may shed light on whether the trial court understood the objection. *See id.* For example, a request for a "self-defense" instruction may not necessarily alert the trial court the defendant is requesting an instruction on deadly force in defense of one's self when there is a dispute whether the weapon is a deadly weapon, or when there are lesser included offenses to which self-defense could apply, or when self-defense is inconsistent with another defensive theory that was presented at the trial. *See id.; Moun v. State,* No. 01–06–00790–CR, 2008 WL 339748, at *2–4 (Tex.App.-Houston [1st Dist.] Feb. 7, 2008, no pet.) (holding omission of self-defense instruction not error "[b]ecause appellant used deadly force" by using "butcher knife" to cause serious bodily injury to complainant; knife is not per se deadly weapon); *Ferrel,* 55 S.W.3d at 591–92 (holding omission of self-defense instruction not error because Ferrel's use of bottle was deadly force since it caused serious bodily injury to complainant, but noting that parties disputed whether bottle was deadly weapon and whether court should have instructed on lesser included offense of misdemeanor assault).[1]

Here, an examination of the record shows that the trial court must have known that appellant was requesting the defensive charge of deadly force in defense of one's self. During voir dire, the State's attorney said:

> In Murder cases, we see the defense of self-defense come up, and basically—and in order for the defense to prove self-defense, a person's justified in using deadly force against another if he would be justified in using force under Section 9.31 . . . if reasonable person in the actor's situation would have retreated. So, it says if you—before you ever get self-defense, if a reasonable person would have retreated. You must retreat before using deadly force. When and to the degree he reasonably believes deadly force is immediately necessary to protect himself against the other's use or attempted use of deadly force.

After voir dire, appellant invoked the defense of deadly force in defense of one's self by testifying that he shot his father with a firearm because he feared his father would kill him. The trial court's instructions to the jury following appellant's testimony gave the sole option of finding the defendant guilty or not guilty of murder caused by a firearm, which is per se a deadly weapon, without any lesser included instructions and without any defenses. *See* Tex. Penal Code Ann. § 1.07(a)(17)(A) (Vernon 2003) (specifically including firearm in definition of deadly weapon). From the statements in voir dire, the theme of appellant's testimony, and the limited jury charge that had no lesser offenses or defenses, the record affirmatively demonstrates that the trial court must have understood that the reference

---

1. Neither the *Moun* nor *Ferrel* decision was premised on preservation of error based on an analysis of whether the objection made by the defendant's attorney at trial was sufficient to place the court on notice of the request.

*See Moun v. State,* No. 01–06–00790–CR, 2008 WL 339748, at *2–4 (Tex.App.-Houston [1st Dist.] Feb. 7, 2008, no pet.); *Ferrel v. State,* 55 S.W.3d 586, 591–92 (Tex.Crim.App. 2001).

to self-defense was to deadly force in defense of one's self.

The dissenting opinion contends the circumstances here are like those in *Bennett*, where the Court of Criminal Appeals determined that a request for a self-defense instruction did not alert the trial court that Bennett was requesting the defensive instruction of defense of a third person or the instruction of defense of property. *See Bennett*, 235 S.W.3d at 243. However, judges and attorneys do not interchange the term self-defense with the defense of third person, perhaps for the obvious reason that self-defense is the defense of one's self and defense of a third person relates to someone other than one's self. Nor do judges and attorneys interchange the term self-defense with the defense of property, perhaps for the obvious reason that self-defense is the defense of one's self and defense of property relates to a thing. Unlike these other defenses, the common practice is for judges and attorneys to interchange self-defense with the defense of deadly force in defense of one's self, because both defenses relate to the same person and the only difference is whether deadly force was used, which is often obvious when the charge includes the death of a person. Moreover, in *Bennett*, the defendant was convicted of misdemeanor assault, which is an offense to which self-defense could apply, so that the court would have no reason to believe the request meant anything else, as compared to the murder here, which is an offense in which self-defense could never apply and only the defense of deadly force in defense of one's self could apply under the circumstances before the court. *See id.* It is true that, in *Bennett*, the court said, "We do not require a trial judge to mull over all the evidence introduced at trial in order to determine whether a defendant's request for a jury instruction means more than it says." *See id.* Of course a trial court

should not have to mull over every piece of evidence to decide whether it could raise different types of defenses that are not explicitly requested. But mulling over every piece of evidence is entirely different from observing the sole general theme of the defense at trial. Nothing in *Bennett* suggests that, in a case where there is only one defense presented and the request for the defensive instruction is made in terms commonly understood by judges and attorneys, a judge should be allowed to turn a blind eye to the request. *See id.* Here, it is implausible to believe that the trial court did not understand that appellant was asking for a defensive instruction of deadly force in defense of one's self since that was the only defense mentioned during voir dire, it was the only defense mentioned in appellant's testimony, and it was the only defense appellant could have been referring to since he was charged with murder with a firearm, which is per se a deadly weapon.

We hold that under the circumstances before the trial court, appellant's objection to the omission of self-defense from the charge was specific enough for the trial court to be placed on notice that he was requesting the charge of deadly force in defense of one's person because

- appellate courts and practitioners use the term self-defense interchangeably with deadly force in defense of one's self;

- the only reference to self-defense by the attorneys in the trial was in the context of self-defense with a firearm, which is per se a deadly weapon; and

- the evidence concerned only the defense of deadly force in defense of one's self, with no fact issue whether the decedent was killed with a deadly weapon, no lesser-included offenses, and no other defenses presented.

A trial court judge is not expected to, nor should he, make defensive requests for the defense or arguments for the State. That is not the situation before us. Rather, the situation here is an imperfectly requested defensive instruction that, under the circumstances shown in the record, could only have been interpreted to mean a request for what is informally called self-defense with a deadly weapon or deadly force, which is formally called deadly force in defense of one's person. We hold that appellant preserved his appellate challenge concerning the trial court's failure to include in the jury instructions the defense of deadly force in defense of one's person.

## Error Analysis

The State contends the trial court did not err by denying the requested instruction because (1) no evidence showed he reasonably perceived he was in danger from deadly force by Carmen, who never attempted to use deadly force on the day of the shooting; (2) a reasonable person in his position would have retreated; and (3) appellant could not arm himself to seek a discussion with Carmen.

Deadly force is justified if the defendant would be justified in using force against the other, if a reasonable person in the actor's situation would not have retreated, and when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. Tex. Penal Code Ann. § 9.32. The use of force against another is not justified if the actor provoked the other's use or attempted use of unlawful force unless the other nevertheless continues or attempts to use unlawful force against the actor. *Id.* § 9.31(b)(4)(B). A defendant "is justified in defending against danger as he reasonably apprehends it" as viewed in light of the evidence of the overt acts and words by the complainant, and there is no additional requirement that the jury find that the complainant was actually using or attempting to use unlawful deadly force against appellant. *Guilbeau,* 193 S.W.3d at 160; *see Lavern v. State,* 48 S.W.3d 356, 360–61 (Tex.App.-Houston [14 Dist.] 2001, pet. ref'd); *Halbert,* 881 S.W.2d at 127; *Semaire v. State,* 612 S.W.2d 528, 530 (Tex.Crim.App.1980).

Viewing the evidence in a light favorable to appellant, the circumstances surrounding the shooting support the appellant's reasonable belief that unless appellant resorted to deadly force, Carmen would cause appellant serious bodily injury by administering a beating more severe than the prior beating that put appellant in the hospital. *See Guilbeau,* 193 S.W.3d at 159–61 (holding trial court erred by failing to instruct on deadly force in self-defense when evidence showed complainant threatened to give Guilbeau "the beating of a lifetime," Guilbeau felt shooting "was the only thing [he] could do at that time to save [himself]," and there was not enough time to retreat because complainant came at him "fast"); *Halbert,* 881 S.W.2d at 127 (holding trial court erred by failing to instruct on self-defense with deadly force when evidence showed complainant physically assaulted Halbert in past, Halbert feared for her life, complainant weighed more than Halbert, and complainant came towards Halbert while threatening to kill Halbert); *Semaire,* 612 S.W.2d at 529–30 (holding error not to instruct on deadly force in self-defense when evidence showed complainant threatened to shoot through door if he did not leave her door; Semaire busted door open and stumbled into apartment; Semaire thought she was going to shoot him when he saw her raise her hands; and there was fact question whether Semaire provoked complainant's attempted use of force).

The trial court could not properly exclude the instruction by determining appellant should have retreated because appellant's testimony was sufficient to make the matter of whether appellant should have retreated a question of fact for the jury. Appellant testified that Carmen would have stopped him before he could get away. *See Halbert*, 881 S.W.2d at 125 (holding no duty to retreat because Halbert believed deadly force immediately necessary to protect against use or attempted use of unlawful deadly force). Therefore, some evidence shows that appellant could not retreat and the matter of retreat should have been for the jury to decide.

The State further says that "it could be argued" that appellant could not arm himself to seek a discussion with Carmen. An exception to self-defense applies when the defendant "sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor was carrying a weapon in violation of Section 46.02." [2] TEX. PEN.CODE ANN. § 9.31(b)(5)(A). A charge limiting a defendant's right to self-defense under this section is properly given when (1) self-defense is an issue; (2) there are facts in evidence that show that the defendant sought an explanation from or discussion with the victim concerning their differences; and (3) the defendant was unlawfully carrying a weapon. *Bumguardner v. State*, 963 S.W.2d 171, 175 (Tex.App.-Waco, 1998, pet.ref'd). The State misinterprets appellant's testimony, which said that he did not obtain the gun until after he feared that Carmen would seriously injure him. Because appellant's testimony shows that appellant armed himself after he feared death from the

Carmen's actions, it should have been up to the jury to decide whether that claim was untrue and whether instead appellant armed himself illegally when he sought an explanation or discussion with Carmen.

Although the State does not contend appellant provoked the incident, we note that there was a question of fact whether appellant provoked the difficulty, because appellant testified that he did not retrieve the gun until after complainant told him that he was going to up the ante, which meant that he was going to be beaten worse than the beating that had previously landed appellant in the hospital. *See Dyson*, 672 S.W.2d at 463 (provocation is usually question of fact); *Semaire*, 612 S.W.2d at 531 (holding fact question on provocation since Semaire "expressly denied any intent to harm" complainant).

We hold that the trial court erred by refusing to charge the jury on the law concerning deadly force in defense of one's person because appellant presented evidence to establish the justification defense.

### Harm Analysis

■ The State contends that if we determine the court's charge was erroneous, we should find the error harmless because the evidence overwhelmingly shows that appellant's actions constituted premeditated murder.

■ Having determined that appellant properly preserved error by objecting to the charge, we must reverse the conviction if appellant suffered any actual harm by the omission of the defensive instruction. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985). The four-part analysis for assessing harm consists of reviewing (1) the entire jury charge; (2) the state

---

**2.** Section 46.02 of the Texas Penal Code states, "A person commits an offense if he intentionally, knowingly, or recklessly carries on or about his person a handgun, illegal knife, or club." TEX. PEN.CODE ANN. § 46.02(a) (Vernon 2003).

of the evidence, including the contested issues and weight of probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Id.*

Under the first factor, we note that the jury charge gave the jury the sole option of finding appellant guilty of murder. The charge instructed the jury to find appellant guilty of murder if the jurors believed beyond a reasonable doubt that appellant intentionally or knowingly committed an act dangerous to human life by "shoot[ing] [Carmen] with a deadly weapon, to wit: a firearm. Appellant admitted this conduct, contending that he did so to defend himself." The charge did not allow the jury to consider any lesser offense or defensive issue.

In examining the evidence under the second factor, appellant presented evidence confined to the sole theory of self-defense with a deadly weapon. The record shows that appellant's entire defense rested on his right to defend himself from Carmen, a person he admittedly shot and killed. Appellant did not attempt to present evidence of any lesser offense or any other defense other than self-defense with a deadly weapon.

The third factor requires that we examine the arguments of counsel. The State's argument emphasized that appellant admitted shooting Carmen. Appellant's attorney's closing argument emphasized the harsh treatment and abuse of appellant at the hands of Carmen. Appellant's attorney summed up his argument, saying, "[W]hat [appellant] did is the only thing he knew to get away, to save himself, to try to save himself. It was the wrong thing to do, but he felt driven to it."

In rebuttal to the argument, the State asserted,

> ... [T]here is no evidence to suggest that [appellant] did not do it. In fact, in his own words, he told you, "I shot my dad." That's the answer. "I shot my dad."
>
> There's no self defense, there's no justification. There is nothing, nothing in this charge that says you can be driven to kill a person. Nothing.

Under the fourth factor, statements during voir dire provide relevant information. As noted above, the State's attorney addressed self-defense and the use of deadly force in self-defense during voir dire, indicating that the State knew the defense would be at issue. The case was tried from the beginning with the expectation that the jury would decide whether the shooting was legally justified.

An examination of the four factors shows that appellant's entire defense rested on his right to defend himself from Carmen, a person he admittedly shot and killed. *See Guilbeau,* 193 S.W.3d at 159–61 (considering error harmful based in part on fact that entire defense was precluded). We hold that appellant was harmed by the erroneous denial of the jury instruction on deadly force in defense of one's person. *See id.*

## Conclusion

We hold that appellant's request was sufficient to alert the trial court that he was requesting the justification defense of deadly force in defense of one's person, that evidence raised the defense, and that the error harmfully deprived appellant of the opportunity to have the jury consider the defense. We therefore reverse and remand for a new trial.

Justice TAFT, dissenting.

TIM TAFT, Justice, dissenting.

Is a request for a jury instruction on self-defense sufficient to put the trial court

on notice that the party wants an instruction on deadly force in defense of person? The issue in this case is very close to the one recently decided by the Court of Criminal Appeals in *Bennett v. State*, 235 S.W.3d 241 (Tex.Crim.App.2007). In *Bennett*, appellant requested a general instruction on self-defense at trial and later complained on appeal that the trial court erred in not submitting an instruction on defense of a third person. *Id.* at 242. The court of appeals had held that appellant's request to include an instruction on self-defense "as it relates to [the] case" was sufficient to place the trial court on notice of her complaint with respect to defense of a third person. *Id.* The Court of Criminal Appeals reversed the court of appeals's judgment, agreeing with the State's position that, because appellant's request for an instruction on self-defense failed to preserve error with respect to an instruction on defense of a third person, the trial court did not err in refusing to submit the latter instruction to the jury. *Id.* at 243.

In *Bennett*, the Court of Criminal Appeals reasoned that self-defense and defense of a third person are separate defenses enumerated in separate sections of the Texas Penal Code [1] and that a request for the former does not by itself alert the trial court with respect to the latter. *Id.* The court rejected appellant's contention that the trial court should have been aware of her complaint because defense counsel used the words "in this case" and because evidence at trial existed that would have supported the submission of an instruction on defense of a third person.[2] *Id.* The court reasoned that the law does not require a trial court to mull over all of the evidence introduced at trial in order to determine whether a defendant's request for a jury instruction means more than it says. *Id.* The court did not require "magic words," but it did require that the substance of the complaint be conveyed to the trial court. *Id.* In *Bennett*, because appellant's challenge did nothing more than convey that she wanted an instruction on self-defense, the substance of the complaint on appeal—that an instruction on defense of a third person was required—was not preserved.[3] *Id.*

---

1. *Compare* Tex. Penal Code Ann. § 9.31 (Vernon Supp.2008) ("Self-Defense") *with id.* § 9.33 (Vernon 2003) ("Defense of Third Person"). Note that in between these two defenses lies "Deadly Force in Defense of Person." *See id.* § 9.32 (Vernon Supp.2008).

2. In fact, the only relevant evidence of a defense at trial was evidence that appellant was acting in defense of a third person. *See generally Bennett v. State*, No. 05–05–01420–CR, 2006 WL 1828107 (Tex.App.-Dallas Dec.20, 2006, pet. granted) (not designated for publication). Note that here appellant did not even use any descriptive words, such as "in this case."

3. The Court of Criminal Appeals stated that it would have been a different case had the record indicated that the trial court actually understood appellant's request to encompass the matters about which the appellant complained on appeal, citing Texas Rule of Appellate Procedure 33.1(a)(1)(A) ("unless the specific grounds were apparent from the context"). *Bennett v. State*, 235 S.W.3d 241, 243 n. 9 (Tex.Crim.App.2007). However, the court determined that there was no indication in the record that the trial court actually understood the appellant's request to extend to any instruction other than one for self-defense. I interpret the court's reference to "context" in rule 33.1(a)(1)(A) as referring to the charge conference, as opposed to evidence at trial, because the Court of Criminal Appeals expressly rejected the argument that appellant's request encompassed the evidence at trial that supported defense of a third person and because the court reasoned that a trial court is not required to mull over all of the evidence introduced at trial. I further note that the language in rule 33.1 requires that, in order to preserve an issue for appellate review, an objection must be sufficiently specific to advise the trial court of the legal basis for the objection. Tex.R.App. P.

All of the reasoning found in *Bennett* applies directly to the facts of this case. First, self-defense and deadly force in defense of person are separate defenses enumerated in separate sections of the Texas Penal Code. *Compare* TEX. PENAL CODE ANN. § 9.31 (Vernon Supp.2008) (entitled "Self–Defense") *with id.* § 9.32 (Vernon Supp.2008) (entitled "Deadly Force in Defense of Person"); *see Bennett,* 235 S.W.3d at 243. Further, we should conclude, as did the court in *Bennett,* that a request for the former does not by itself alert the trial court that the latter is being requested. *See Bennett,* 235 S.W.3d at 243. Although the record may contain sufficient evidence to support a request for an instruction on deadly force in defense of person, the law does not require the trial court to review all of the evidence in order to determine if appellant's request meant more than what he stated. *See id.* In fact, the Court of Criminal Appeals has placed the burden on the defendant to request a defensive instruction in order to ensure preservation. *See id.; see also Posey v. State,* 966 S.W.2d 57, 62 (Tex.Crim.App.1998). Appellant's request in this case did nothing more than convey to the trial court that he wanted an instruction on self-defense and, thus, did not preserve the substance of the complaint on appeal, which is that the trial court erred in not instructing on deadly

force in defense of person. *See Bennett,* 235 S.W.3d at 243. I would not place the duty on the trial court to determine whether a request for self-defense actually means a request for deadly force in defense of person.

Because I believe that the rationale of *Bennett* squarely controls the disposition of this case, I respectfully dissent.

---

33.1(a)(1)(A); *Starks v. State,* 127 S.W.3d 127, 133 (Tex.App.-Houston [1st Dist.] 2003, pet. dism'd) ("To properly preserve an issue for appellate review, there must be a timely objection that specifically states the legal basis for the objection.") (citing *Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App.1990)). As stated above, appellant made only a general request for an instruction on self-defense and did not specifically state the grounds for his request and, thus, appellant's request would not have conformed to the requirements of rule 33.1(a)(1)(A). *See Pennington v. State,* 697 S.W.2d 387, 390 (Tex.Crim.App. 1985) ("It is clear then that a general objection which does not distinctly specify the

claimed error in the charge is not sufficient to preserve error."). Likewise, it would have been a different case here if appellant had requested an instruction on "self-defense using deadly force," or had said anything that would have placed the trial court on notice that appellant was requesting something more than mere "self-defense." In all of the authorities on which the majority relies for the proposition that "self-defense" and "deadly force in defense of one's person" are interchangeable, there is always something more than mere "self-defense" within the immediate context of the use of the term self-defense to make it clear that deadly force in defense of person is actually intended.