

# IN THE
# TENTH COURT OF APPEALS

## No. 10-08-00319-CR

**STEPHEN ALLEN EVANS,**

                                                **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                **Appellee**

---

**From the 413th District Court**
**Johnson County, Texas**
**Trial Court No. F42076**

---

## MEMORANDUM  OPINION

---

A jury convicted Stephen Allen Evans of two counts of aggravated assault. The jury assessed his punishment at five years' confinement on one count and recommended that imposition of this sentence be suspended. The jury assessed his punishment at ten years' imprisonment for the other count. Evans contends in four points that: (1) the two convictions are for the same offense and thus violate the Double Jeopardy Clause; (2) the court abused its discretion by overruling his objections to the prosecutor's alleged misstatements of law regarding self-defense; and (3) the court

abused its discretion by excluding evidence of the complainant's prior history of drug use and a prior assault (two points). We will modify the judgment by vacating one of Evans's convictions and affirm the judgment as modified.

## Double Jeopardy

Evans contends in his first point that his two convictions are for the same offense and thus violate the Fifth Amendment's Double Jeopardy Clause. The State concedes that a double jeopardy violation has occurred. The parties dispute which conviction should be vacated.

"When [as here] a defendant is subjected to multiple punishments for the same conduct, the remedy is to affirm the conviction for the most serious offense and vacate the other convictions." *Bigon v. State*, 252 S.W.3d 360, 372 (Tex. Crim. App. 2008). The "most serious offense" is "the offense in which the greatest sentence was assessed." *Id.* at 373 (citing *Ex parte Cavazos*, 203 S.W.3d 333, 338 (Tex. Crim. App. 2006)).

The jury assessed the greatest sentence against Evans under Count Three, sentencing him to ten years' imprisonment. Therefore, we vacate his conviction under Count One.[1] Evans's first point is sustained.

## Misstatements of Law

Evans contends in his second point that the court abused its discretion by overruling his objections to the prosecutor's alleged misstatements of law during voir dire and closing argument regarding self-defense. Specifically, Evans argues that the

---

[1] The jury acquitted Evans of the aggravated assault allegation contained in Count Two of the indictment.

prosecutor misstated the applicable law regarding a person's right to use deadly force in self-defense.

Section 9.32(a)(2)(A) of the Penal Code provides that a person is justified in using deadly force against another "when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force." TEX. PEN. CODE ANN. § 9.32(a)(2)(A) (Vernon Supp. 2009)).

By contrast, section 9.31(a) provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* § 9.31(a) (Vernon Supp. 2009).

> [I]t is not necessary that a jury find that the [complainant] was using or attempting to use unlawful deadly force against a defendant in order for the defendant's right of self-defense to exist. A person has the right to defend himself from apparent danger to the same extent as he would if the danger were real.

*Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996); *see Carmen v. State*, 276 S.W.3d 538, 545 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) ("there is no additional requirement that the jury find that the complainant was actually using or attempting to use unlawful deadly force against appellant").

Evans complains that the prosecutor misstated the applicable law by stating that he "could not use deadly force unless deadly force was in fact used against him first." Such a statement would appear to be contrary to applicable law. *See id.* However,

Evans's paraphrase of the complained-of statements is not entirely accurate and appears to be taken out of context.

It is improper for a prosecutor to misstate the law. *See Whiting v. State*, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990); *Abbott v. State*, 196 S.W.3d 334, 343 (Tex. App.—Waco 2006, pet. ref'd). However, when evaluating the propriety of the challenged statement, we must consider the context in which it was made. *See Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997); *Davis v. State*, 268 S.W.3d 683, 694 (Tex. App.—Fort Worth 2008, pet. ref'd); *see also Gardner v. State*, No. AP-75,582, 2009 WL 3365652, at *17 (Tex. Crim. App. Oct. 21, 2009) ("Although it is possible to construe this argument as being improper when taken out of its full context, the prosecutor's argument is more naturally interpreted as a permissible one.").

Evans first complains of the prosecutor's explanation of the law concerning the use of deadly force during voir dire. He cites as examples the following:

- "You can only respond to force with force"

- "the law specifically says the use of deadly force is not justified if all that is threatened is force"

- "the law says if a person is under attack by the use of force, not deadly force, you can respond with force, but not deadly force. Okay. In other words, there's a proportionate, proportionality, I don't know what the right word would be, but you can't use deadly force to repel an attack that's only force"

At first blush, these statements might be construed as assertions that a person may act in self-defense only when actual force is used against him (and can use deadly force in self-defense only when deadly force is actually used against him).

However, when read in context, it appears that the prosecutor was attempting to explain the difference between the justified use of deadly force in self-defense and the justified use of force less than deadly in self-defense. Regardless of whether a person faces an actual or apparent threat, sections 9.31 and 9.32 contain a proportionality requirement with regard to the magnitude of force which the person is legally justified to employ. *See Tidmore v. State*, 976 S.W.2d 724, 728-29 (Tex. App.—Tyler 1998, pet. ref'd) ("The amount of force used must be in proportion to the force encountered."); *accord McBride v. State*, No. 13-04-00575-CR, 2006 WL 1965822, at *5 (Tex. App.—Corpus Christi July 13, 2006, pet. ref'd) (not designated for publication); *Seibert v. State*, No. 05-03-01131-CR, 2004 WL 2804795, at *6 (Tex. App.—Dallas Nov. 30, 2004, pet. ref'd) (not designated for publication). "Deadly force is not immediately necessary if a reasonable person in the position of the defendant would use some available nondeadly method of self-defense. In such circumstances, a defendant's use of deadly force would not be justified." *Tidmore*, 976 S.W.2d at 729; *accord McBride*, 2006 WL 1965822, at *5; *Seibert*, 2004 WL 2804795, at *6.

Later in voir dire after the statutory definitions had been read to the venire panel and discussed further, a veniremember commented (apparently in his own effort to explain Evans's objection):

> This is the reason for his objection. That's why he keeps standing up and saying he keeps leaving out the word perceived attempted force or some such, because if you perceive you're going to be met with force, he's probably going to argue that his client has the right to stop that force from happening.

The prosecutor agreed that the issue of self-defense must be viewed from "the defendant's standpoint" but re-emphasized that his focus was on the magnitude of force a person is justified in using in self-defense. The prosecutor later commented that "if a defendant reasonably believes he or she is being attacked with deadly force, then you [sic] can respond with deadly force." But the prosecutor also reiterated that his point was that there is a proportionality requirement regarding the magnitude of force which may be used in self-defense.

The prosecutor correctly stated that there is a proportionality element incorporated within the law of self-defense. *See McBride*, 2006 WL 1965822, at *5; *Seibert*, 2004 WL 2804795, at *6.*Tidmore*, 976 S.W.2d at 728-29. He acknowledged in voir dire that the issue of self-defense must be viewed from the defendant's perspective and what he reasonably believed. Thus, we cannot say that the challenged statements, when viewed in context, were affirmatively incorrect.

Evans also complains of a similar remark made during closing argument. The prosecutor stated, "And it says you can use deadly force in this scenario. When you're under attack or attempted attack by someone using or attempting to use deadly force. That is the scenario that talks about deadly force."

As with the challenged voir dire statements, this argument standing alone could be construed as an assertion that there must be an actual use or attempted use of deadly force before a person is justified in using deadly force in self-defense. However, when the argument is read in context with the prosecutor's entire closing argument, we

conclude that the prosecutor's focus on the proportionality issue was not affirmatively incorrect.

Just before making the challenged statement, the prosecutor reminded the jury that a person is justified in using force "to the degree [he] believes is immediately necessary viewed from his standpoint." The charge accurately stated the applicable law. The prosecutor correctly stated that there is a proportionality element incorporated within the law of self-defense. *Id.*

Accordingly, we cannot say that the court abused its discretion by overruling Evans's objections to the complained-of voir dire statements and closing argument. Evans's second point is overruled.

**Extraneous Misconduct**

Evans contends in his third and fourth points respectively that the court abused its discretion by excluding evidence of the complainant's prior history of drug use and a prior assault he committed.

At the beginning of trial, the trial court granted the State's motion in limine regarding evidence of the complainant Timothy Carter's prior violent acts and any prior possession or use of illegal drugs by Carter. During Evans's cross-examination of Carter, he sought to establish that Carter had "committed assaults" and "was in possession of drugs" in Granbury. Outside the presence of the jury, Evans's counsel explained that these prior acts were relevant to self-defense because Evans was aware of them when he assaulted Carter. Evans sought to make an offer of proof at this juncture in the trial "about the assaults that occurred there and his drug use there." After further

discussion regarding the relevance of the extraneous misconduct evidence, Evans's

counsel agreed to make an offer of proof later in the trial after establishing relevance

(*i.e.*, by showing that Evans was aware of the extraneous misconduct when he assaulted

Carter).  However, Evans did not thereafter attempt to make an offer of proof.

> The rules of evidence permit the defendant to offer evidence concerning the victim's character for violence or aggression on two separate theories when the defendant is charged with an assaultive offense, as applicant was in this case.

> First, the defendant may offer reputation or opinion testimony or evidence of specific prior acts of violence by the victim to show the "reasonableness of defendant's claim of apprehension of danger" from the victim.  This is called "communicated character" because the defendant is aware of the victim's violent tendencies and perceives a danger posed by the victim, regardless of whether the danger is real or not.  This theory does not invoke Rule 404(a)(2) because Rule 404 bars character evidence only when offered to prove conduct in conformity, *i.e.*, that the victim acted in conformity with his violent character.  Here, the defendant is not trying to prove that the victim actually is violent; rather, he is proving his own self-defensive state of mind and the reasonableness of that state of mind.

> . . . .

> Second, a defendant may offer evidence of the victim's character trait for violence to demonstrate that the victim was, in fact, the first aggressor.  Rule 404(a)(2) is directly applicable to this theory and this use is called "uncommunicated character" evidence because it does not matter if the defendant was aware of the victim's violent character.  The chain of logic is as follows: a witness testifies that the victim made an aggressive move against the defendant; another witness then testifies about the victim's character for violence, but he may do so only through reputation and opinion testimony under Rule 405(a).

*Ex parte Miller*, No. AP-76,167, 2009 WL 3446468, at * 4-5 (Tex. Crim. App. Oct. 28, 2009)

(quoting *Dempsey v. State*, 159 Tex. Crim. 602, 266 S.W.2d 875, 877 (1954)) (footnotes

omitted).

To preserve error with regard to the exclusion of evidence, a party must make an offer of proof setting forth the substance of the excluded evidence unless the substance of the evidence was apparent from the context. TEX. R. EVID. 103(a)(2); *Mays v. State*, 285 S.W.3d 884, 889-90 (Tex. Crim. App. 2009). Evans's counsel plainly informed the trial court that he wanted to offer evidence of a prior assault committed by Carter for which he was placed on deferred adjudication community supervision. Thus, we conclude that Evans adequately preserved error with regard to the court's exclusion of this evidence. *See Mai v. State*, 189 S.W.3d 316, 322 (Tex. App.—Fort Worth 2006, pet. ref'd).

Because Evans claimed to be aware of this prior assault and because Evans sought to prove it through Carter's own testimony, it appears that Evans sought to introduce this evidence as "communicated character" evidence to show the "reasonableness of [his] claim of apprehension of danger." *See Miller*, 2009 WL 3446468, at * 4. However, Evans never established that he was aware of this specific assault.

Evans testified that Carter told him "he's been in a lot of fights and that he's been in trouble for fighting." This general statement is not sufficient to establish that Evans was aware that Carter had committed an assault in Granbury for which he was placed on deferred adjudication community supervision. Accordingly, the court did not abuse its discretion by excluding this evidence. *See Hayes v. State*, 124 S.W.3d 781, 785-86 (Tex. App.—Houston [1st Dist.] 2003) (evidence of victim's prior assault with wrench admissible to show reasonableness of defendant's fear because defendant personally knew of incident, but evidence of victim's prior assault with gun inadmissible because defendant had no knowledge of it), *aff'd*, 161 S.W.3d 507 (Tex. Crim. App. 2005).

With regard to evidence of Carter's alleged prior drug use, we construe Evans's complaint as having two parts: (1) exclusion of evidence regarding Carter's alleged possession of drugs in Granbury; and (2) permitting the State's witness to "minimize" the presence of Valium in Carter's system on the day of the assault.

Evans's father testified that Carter told them "he had done a lot of drugs in the past." This general statement is not sufficient to establish that Evans was aware that Carter had possessed drugs in Granbury on a particular occasion. Accordingly, the court did not abuse its discretion by excluding this evidence. *Id.*

The State called Dr. Arthur Raines to establish that Carter suffered serious bodily injury and that Evans's feet and the pavement against which he was "jamming, cramming, slamming"[2] Carter's head both constituted deadly weapons in the manner of their use. On cross-examination, Evans's counsel reviewed Carter's medical records with Dr. Raines and sought to establish from blood tests that Carter was under the influence of a combination of alcohol, valium and marihuana at the time of the assault. Regarding valium, Dr. Raines opined that the amount indicated was a therapeutic amount. Evans objected that this opinion was speculative, but the court overruled the objection. On redirect, Dr. Raines explained that a sedative like valium is often used in an emergency room as a sedative to assist with a patient's intubation.

Evans did not call any experts of his own to try to refute Dr. Raines's interpretation of Carter's medical records. Dr. Raines explained the basis for his opinion that the amount of valium in Carter's system was therapeutic. We cannot say

---

[2]     These are the words of an eyewitness to the assault.

that the court abused its discretion by overruling Evans's objection to this testimony. *See DeLarue v. State*, 102 S.W.3d 388, 396 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ("Expert testimony cannot be based upon mere guess or speculation, but must have proper factual basis").

Evans's third and fourth points are overruled.

We modify the judgment by vacating Evans's conviction for aggravated assault under Count One of the indictment and affirm the judgment as modified. *See Caballero v. State*, 292 S.W.3d 152, 156 (Tex. App.—San Antonio 2009, pet. ref'd).

FELIPE REYNA
Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
Modified and affirmed
Opinion delivered and filed February 3, 2010
Do not publish
[CR25]