Anthony James DIXON, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–09–00340–CR.

Court of Appeals of Texas, Houston (1st Dist.).

March 10, 2011.

Discretionary Review Refused Dec. 14, 2011.

---

Michelle Ferguson, Orange, TX, for Appellant.

Phillip C. Smith, Asst. County Attorney, Orange, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

ELSA ALCALA, Justice.

Appellant, Anthony James Dixon, appeals a judgment convicting him for attempted aggravated assault with a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West Supp. 2008); *Burke v. State*, 28 S.W.3d 545, 548 (Tex.Crim.App. 2000) (person commits aggravated assault by threatening imminent bodily injury and using or exhibiting deadly weapon during commission of assault); TEX. PENAL CODE ANN. § 15.01 (West 2003) (attempt is more

than mere preparation, and it tends but fails to effect commission of offense intended). In four issues, appellant contends the trial court erred by using a single verdict form, by failing to require unanimity in the acquittal of the greater offense before consideration of the lesser offense, by failing to instruct the jury on lesser-included offenses of deadly conduct and reckless driving, and by admitting out-of-court hearsay statements and a 911 call. Determining the trial court did not err in its jury charge and admission of evidence, we affirm the judgment.

## Background

Shortly before 2:00 a.m. one night in May 2008, the complainant, Cherlyn Kelly, was a passenger in a truck driven by appellant, whom she lived with in Orange, Texas. Kelly was a drug addict who had relapsed by using crack cocaine and marijuana that night. Appellant, upset with Kelly for not sharing her drugs with him, refused to allow her out of the truck.

When he was about three blocks from the house where he lived with Kelly, appellant stopped the truck due to a problem with the gearshift. Kelly left the truck, angering appellant. They argued, with appellant shouting expletives as her. Kelly ran twice around one house and then around a green house at 504 Park. Appellant chased her in his truck while revving the engine loudly. He drove on the lawn of the green house, striking it and taking bark off a tree. Kelly stated that had she not fallen under the house, he would have run over her when he struck the house and tree, and she would have been killed or seriously injured. She stated that she feared for her life during the chase. The chase ended when the truck stalled in the middle of the road. Kelly was then able to call 911 by using the cell phone of a man who stopped to help. After that, she ran to her apartment, called 911 again, and within a short amount of time, saw the police arrest appellant.

Pamela Brown saw most of these events from her house across the street. Brown saw appellant arguing with Kelly before Kelly ran from the truck when it was stopped on the corner of Park and Fourth. Brown saw the truck chase Kelly, who ran screaming. Brown observed the truck follow Kelly and leave the roadway. Kelly ran around the green house and then between a tree and the house, before taking a right turn towards Fifth Street. Brown stated the truck followed Kelly while the engine was revved up high. Brown, however, expressed no opinion whether appellant was actually trying to run over Kelly.

Officers responding to the scene noticed that the truck had damage on the driver's side with green paint that appeared to have been transferred from the green-colored house. A tree near the house had bark missing from being struck with the truck. Appellant denied striking the house, claiming he had dropped off Kelly at their apartment.

The complainant called 911 twice. The first 911 call was not admitted into evidence. The second 911 call was admitted over appellant's hearsay objection. In the call, complainant is emotional with a quivering voice. She begins by giving her name and address, stating "Anthony James Dixon just tried to run me over again." The 911 operator states, "Okay, someone is on the way." Complainant then states, "I am at home, I made it home, somebody's probably home." The 911 operator asks if the complainant is hurt and she responds that she is not, explaining that she got away and made it through the houses. The rest of the call consists of the 911 operator obtaining the address and phone number of the com-

plainant, and telling her that the police are on the way.

At 1:54 a.m., Officer Kemp was dispatched to the scene, where she stayed for about 20 minutes, until she went to Kelly's apartment to speak with her. Officer Kemp described Kelly as "very visibly shaken, very upset, scared, excited, and crying." When Officer Kemp asked her what happened, Kelly described in detail how appellant tried to kill her by running over her. Appellant's attorney lodged a hearsay objection at trial to Officer Kemp's description of Kelly's statements.

A single indictment charged appellant with two paragraphs. The first paragraph charged aggravated assault by intentionally or knowingly threatening to cause bodily injury with the truck that was used as a deadly weapon. The second paragraph charged the lesser-included offense of attempted aggravated assault. The attempted aggravated assault alleged:

> [Appellant] with the specific intent to commit the offense of aggravated assault, did then and there intentionally and knowingly use a deadly weapon, to wit: a truck, that in the manner of its use and intended use was capable of causing death and serious bodily injury, and did then and there intentionally and knowingly attempt to cause bodily injury to Cherlyn Kelly by trying to run over said Cherlyn Kelly with said truck, that amounted to mere preparation that tends but fails to effect the commission of the offense intended.

The jury charge included a single verdict form that allowed the jury three options: (1) to find appellant guilty of aggravated assault; (2) if it had a reasonable doubt about that offense, to find appellant guilty of attempted aggravated assault; or (3) if it had a reasonable doubt about any offense, to find him not guilty. Appellant's attorney requested lesser-included offenses of deadly conduct, which he referred to as reckless conduct,[1] and reckless driving. The trial court denied the request.

During deliberations, the jury sent a written note asking, "If the panel is not unanimous on the first count but is unanimous on the second count, do we have to be unanimous on acquittal of first count before voting on second?" Appellant told the court to answer "yes." Overruling appellant's objection, the trial court answered the question, stating, "No. You may find him guilty on Count One or Count Two or find him not guilty." The jury found appellant guilty of attempted aggravated assault and assessed punishment at 10 years in prison and a $5,000 fine.

## Lesser–Included Offenses

█ In his first issue, appellant contends the trial court erred by failing to instruct the jury on lesser-included offenses of deadly conduct and reckless driving. A defendant is entitled to a jury charge on a lesser-included offense if two prongs are met. *Flores v. State*, 245 S.W.3d 432, 439 (Tex.Crim.App.2008). First, the defendant must request an instruction on a lesser-included offense of the charged offense under article 37.09 of the Texas Code of Criminal Procedure. *Id.*; Tex.Code Crim. Proc. Ann. art. 37.09 (West 2006). Second, there must be "some evidence" that if the defendant is

---

1. The State does not contend that the trial court failed to understand appellant's request for reckless conduct was a request for deadly conduct. *See Carmen v. State*, 276 S.W.3d 538, 548 n. 3 (Tex.App.-Houston [1st Dist.] 2008, pet. ref'd) (holding error is preserved if trial court understands basis of appellant's request for lesser included offense instruction).

guilty, he is guilty only of the lesser-included offense. *Flores,* 245 S.W.3d at 439.

### A. Analysis of First Prong

Both deadly conduct and reckless driving meet the first prong for lesser-included offenses based on the indictment in this case.

### 1. Applicable Law

■ For the first prong, the determination of whether an offense is a lesser-included offense of the alleged offense is a question of law that does not depend on the evidence to be produced at trial; rather, it depends on the elements in the charging instruments. *Hall v. State,* 225 S.W.3d 524, 535 (Tex.Crim.App.2007).

An offense is a lesser-included offense if:

(1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) It differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) It consists of an attempt to commit the offense charged or an otherwise included offense.

TEX.CODE CRIM. PROC. ANN. art. 37.09; *Aguilar v. State,* 263 S.W.3d 430, 435 (Tex. App.-Houston [1st Dist.] 2008, pet. ref'd).

Under the indictment in this case, the offenses of aggravated assault and attempted aggravated assault require proof of an intentional or knowing mental state. "Intentionally" means that it is the defendant's conscious objective or desire to engage in conduct or cause the result. *See*

TEX. PENAL CODE ANN. § 6.03(a) (West 2003). A defendant acts "knowingly" with respect to the nature of his conduct or the circumstances surrounding his conduct if he is aware of the nature of his conduct or that the circumstances exist; a defendant acts "knowingly" with respect to the result of his conduct if he is aware that his conduct is reasonably likely to cause the result. *See* TEX. PENAL CODE ANN. § 6.03(b). In contrast, deadly conduct and reckless driving both have recklessness as the mental state. *See* TEX. PENAL CODE ANN. § 22.05(a) (West 2003); TEX. TRANSP. CODE ANN. § 545.401(a) (West 1999). "Recklessness" means that the defendant is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. *See* TEX. PENAL CODE ANN. § 6.03(c); *Dillon v. State,* 574 S.W.2d 92, 94 (Tex. Crim.App.1978).

### 2. Analysis

#### a. Deadly Conduct

■ Deadly conduct requires evidence that the appellant recklessly engaged in conduct that placed Kelly in imminent danger of serious bodily injury. *See* TEX. PENAL CODE ANN. § 22.05(a); *Guzman v. State,* 188 S.W.3d 185, 190–91 (Tex.Crim. App.2006). When the indictment alleges that the defendant intentionally or knowingly threatened to cause bodily injury to the complainant with a deadly weapon, deadly conduct is established by proof of the same or less than all the facts to establish aggravated assault. *Guzman,* 188 S.W.3d at 190 (alleged act of threatening to cause bodily injury to complainant with deadly weapon is an act that would place complainant in imminent danger of serious bodily injury); *Bell v. State,* 693 S.W.2d 434, 437–39 (Tex.Crim.App.1985)

(same). In *Bell,* the Court of Criminal Appeals explains,

> Patently, threatening another with imminent bodily injury is engaging in conduct. When that threat is accomplished by the use of a deadly weapon, by definition the victim is "exposed" to the deadly character of the weapon and the inherent risk of serious bodily injury. The *danger* of serious bodily injury is necessarily established when a deadly weapon is *used* in the commission of an offense. It follows, therefore, that proof of threatening another with imminent bodily injury by the use of a deadly weapon constitutes proof of engaging in conduct that places another in imminent danger of serious bodily injury.

*Bell,* 693 S.W.2d at 438–439. Like *Guzman* and *Bell,* the indictment here alleges aggravated assault and attempted aggravated assault by threatening to cause bodily injury with a deadly weapon, which satisfies the first prong for admission of deadly conduct as a lesser-included offense. *Guzman,* 188 S.W.3d at 190; *Bell,* 693 S.W.2d at 439.

### b. Reckless Driving

 The elements of reckless driving are that the appellant drives a vehicle with willful or wanton disregard for the safety of persons or property. *See* TEX. TRANSP. CODE ANN. § 545.401(a); *Harris v. State,* 152 S.W.3d 786, 796 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd). Willful and wanton disregard as applied to reckless driving means deliberate and conscious indifference to the safety of others. *Benge v. State,* 94 S.W.3d 31, 36 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd). This meets the first prong for lesser-included offenses because the elements of reckless driving are included within the proof necessary to establish the commission of the offenses of aggravated assault and attempted aggravated assault as charged in

this case. *Benge,* 94 S.W.3d at 36; TEX. CODE CRIM. PROC. ANN. art. 37.09(1).

### B. The Second Prong

Neither deadly conduct nor reckless driving meet the second prong for lesser-included offenses based on the record in this case.

### 1. Applicable Law

 The second prong requires that the record contain some evidence that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Skinner v. State,* 956 S.W.2d 532, 543 (Tex.Crim.App.1997), *cert. denied,* 523 U.S. 1079, 118 S.Ct. 1526, 140 L.Ed.2d 677 (1998). The evidence must establish the lesser-included offense as a valid rational alternative to the charged offense. *Arevalo v. State,* 943 S.W.2d 887, 889 (Tex.Crim.App.1997). Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge. *Ferrel v. State,* 55 S.W.3d 586, 589 (Tex.Crim.App.2001). In making this decision, the court does not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Hall v. State,* 158 S.W.3d 470, 473 (Tex. Crim.App.2005). In applying the second prong, the appellate court must examine the entire record instead of plucking certain evidence from the record and examining it in a vacuum. *Ramos v. State,* 865 S.W.2d 463, 465 (Tex.Crim.App.1993). Evidence that shows no offense occurred at all fails to raise the issue of a lesser-included offense. *Lofton v. State,* 45 S.W.3d 649, 652 (Tex.Crim.App.2001).

▪ The test for determining whether evidence is legally sufficient and the test for determining whether to submit a lesser-included offense jury instruction are "quite different." *Wasylina v. State,* 275 S.W.3d 908, 909 (Tex.Crim.App.2009).

The evidence could easily be legally sufficient to support a conviction for a lesser-included offense but not justify the submission of a lesser-included offense instruction because the evidence does not show that the defendant is guilty only of the lesser-included offense. *Id.* at 909–910.

■ For a lesser-included offense instruction to be required, the evidence suggestive of the lesser offense must be more than a jury's disbelief of evidence establishing the greater offense. *Hampton v. State,* 109 S.W.3d 437, 441 (Tex.Crim.App. 2003). "[T]here must be affirmative evidence to rebut the greater element, and the jury may not simply disbelieve evidence establishing the greater." *Schmidt v. State,* 278 S.W.3d 353, 362 (Tex.Crim. App.2009); *see also Segundo v. State,* 270 S.W.3d 79, 90–91 (Tex.Crim.App.2008) (holding trial court properly denied lesser-included offense instruction because evidence showed only that medical examiner said it was possible for sperm to remain in person's vaginal vault for up to 72 hours, but that evidence raised only theoretical possibility that rape and murder could be disconnected in time and space, and no evidence in record showed that victim's rape and murder were, in fact, disconnected based on medical evidence that they occurred at same time); *Enriquez v. State,* 21 S.W.3d 277, 278–282 (Tex.Crim.App. 2000) (holding trial court erred by giving lesser-included offense instruction for lesser amount of marijuana because chemist only tested one bundle of bundles in evidence); *Hampton,* 109 S.W.3d at 441 (holding trial court erred by including instruction on lesser-included offense of sexual assault because complainant testified knife was used during sexual assault and failure to find knife was not affirmative evidence that no knife was used).

### 2. Analysis

■ Appellant contends the second prong is met for deadly conduct and reckless driving by pointing to a particular portion of Brown's testimony. The record shows the following:

> [Attorney]: Did it look to you like he was actually trying to run over her?
>
> [Brown]: I couldn't tell you that.

Appellant interprets this testimony as evidence that appellant was not trying to run over Kelly. But the witness's answer is indefinite on this point. It is subject to the interpretation that the witness could not tell one way or another. Counsel did not follow up to clarify the witness's statement. Without such clarification, the trial judge, who heard the words spoken, was in a better position to evaluate the answer. The witness later stated that the truck definitely followed Kelly "through yards and around houses."

A lesser-included offense instruction is not required for evidence examined in a vacuum. *See Ramos,* 865 S.W.2d at 465. The entire evidence must be examined in context. *See id.* Brown's entire testimony shows that she heard an argument before she saw the truck follow Kelly as it revved its engine while Kelly ran screaming around a house. We decline to hold that the trial court abused its discretion, as appellant suggests, when the testimony as a whole does not negate intent, and the portion of the testimony appellant points to is unclear in its meaning. *See id.*

■ Appellant also points to evidence that, at times during the chase, he drove on a trail used by vehicles and, at the end of the incident, drove in an opposite direction from that taken by Kelly. Although those facts might be indicative of lesser-included offenses of deadly conduct or reckless driving, this evidence does not show that the defendant is guilty only of

the lesser-included offenses, when the testimony is that he was chasing Kelly while on that trail and almost struck her with his truck when he chased her around two houses. *See Wasylina*, 275 S.W.3d at 909–910.

Appellant relies on *Benge v. State* to support his position that the lesser-included offense instructions were required. *Benge*, 94 S.W.3d at 35–37 (lesser-included offense instruction of reckless driving should have been given where Benge was charged with aggravated assault and testified she had no intent to hit complainant and tried to stop truck); *see Rice v. State*, 305 S.W.3d 900, 905–907 (Tex.App.-Dallas 2010, pet. granted) (lesser-included offense instructions on deadly conduct and reckless driving should have been given where Rice testified he lost his temper, drove around parking lot to look for complainants, was not trying to hit complainants, and never saw them, and other evidence established recklessness of appellant's conduct). Unlike *Benge* and *Rice*, here appellant did not testify about any lack of intent to strike Kelly, nor does any evidence from any source show he lacked the intentional or knowing mental state. Instead, the only evidence shows he argued with Kelly and chased her in his truck while she ran away screaming, narrowly missing her as she rolled out of the way into a hole under a house that he struck.

The facts here are more like those in *Coleman v. State*, where the Amarillo Court of Appeals determined the lesser-included instruction was not required. *Coleman v. State*, No. 07–08–00395–CR, 2009 WL 2168769 at *2 (Tex.App.-Amarillo July 21, 2009, no pet.) (mem. op.) (not designated for publication). Coleman struck the complainant's car on four or five occasions after becoming angry with him, with two of the strikes occurring in the presence of a police officer. *Id.* at *1.

The investigating officer could not state whether the accident was caused by Coleman's faulty brakes or the complainant's sudden stop. *Id.* at *2. The Amarillo court determined that the officer's inability to speculate about other causes for the collision was not affirmative evidence that would require lesser-included offense instructions of deadly conduct and reckless driving. *Id.* The court explained that speculation about other possible reasons for the event was not a proper basis to include a lesser-included offense instruction. *Id.* at *2–3.

Like *Coleman*, here the record lacks affirmative evidence that appellant is guilty only of the lesser-included offenses of deadly conduct and reckless driving. We hold the trial court did not err by refusing to include those lesser-included offenses in its charge to the jury. We overrule the first issue.

### Admission of Evidence

In his second and third issues, appellant contends the trial court erred by admitting hearsay: Kelly's statements made to Detective Kemp and Kelly's statements made to the phone operator during her second 911 call.

### A. Applicable Law

We review trial court rulings concerning admission or exclusion of evidence under an abuse of discretion standard. *Sexton v. State*, 93 S.W.3d 96, 99 (Tex.Crim.App. 2002); *Erdman v. State*, 861 S.W.2d 890, 893 (Tex.Crim.App.1993). A trial court abuses its discretion when it acts arbitrarily and unreasonably without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim.App.1990).

Admission of an excited utterance is an exception to the rule that hearsay statements are generally not admissible.

*Apolinar v. State,* 155 S.W.3d 184, 186 (Tex.Crim.App.2005). An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.; see also* Tex.R. Evid. 803(2). The exception is based on the assumption that the declarant is not, at the time of the statement, capable of the kind of reflection that would enable him to fabricate information. *Apolinar,* 155 S.W.3d at 186.

### B. Statement to Detective Kemp

■ Appellant contends Kelly's statement described in Detective Kemp's trial testimony is hearsay because it is not an excited utterance. Appellant complains of the following narrative conveyed through Detective Kemp:

> She explained to me that [appellant] had tried to kill her by running her—running over her, and she had also spoken in reference to an earlier incident in which I had made contact with her. She explained what happened there. She said that she truly thought that he was going to kill her, that she—the vehicle was traveling down the road which she was the passenger, he was driving. They had been arguing all throughout, apparently, the course of a weekend. And he stopped the vehicle—they had been having trouble with the truck and he stopped the vehicle and I think it died. She took that as an opportunity to run out of the truck. She took off running in between two houses there on Park, and he pursued—I guess apparently was able to get it started and

pursued after her in the truck. And she said that he came in between the two houses, which would have been—basically he would have been traveling, you know, in between the two houses and struck—to squeeze the distance between the two, she said that she had fallen into a ditch, I remember her saying—or fallen into a hole which caused her to duck down; and she said that's the reason that it missed her head. It narrowly missed her head. And then he traveled—struck—was able to squeeze in between the two by striking the tree and then bouncing and hitting into the house.

■ Appellant points out that Kelly's statement was made in response to questioning by Detective Kemp,[2] but the mere fact that the statements are the result of a question asking what happened does not make the statement inadmissible. *Apolinar,* 155 S.W.3d at 190. Appellant also suggests that the passage of one hour between the event and the statement is too long for an excited utterance in light of evidence that in that time Kelly left the scene of the offense, walked home, and made two 911 calls to the police.

Based on Detective Kemp's description of Kelly's emotional state, the one hour time lapse does not make the statement inadmissible as an excited utterance. Detective Kemp described Kelly as "very visibly shaken, very upset, scared, excited, and crying" as Kelly discussed the event. This evidence satisfies the requirement for admission of hearsay as an excited utter-

**2.** Evidence that a statement is made in response to questioning in relevant to whether a statement violates the Confrontation Clause. *See Wall v. State,* 184 S.W.3d 730, 741 n. 40 (Tex.Crim.App.2006); *Spencer v. State,* 162 S.W.3d 877 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd). Appellant made no Confrontation Clause objection at trial and does not assert that issue in this appeal. We also note that appellant cites two cases as his authority, but neither case mentions exited utterances. *See Fischer v. State,* 252 S.W.3d 375 (Tex.Crim.App.2003) (discussing present sense impression exception to rule against hearsay); *Hughes v. State,* 128 S.W.3d 247 (Tex.App.-Tyler 2003, pet. ref'd) (same).

ance under these circumstances, which show the statement was not self-serving and was made shortly after the event. *See id.* at 190–91 (testimony that declarant still appeared nervous or distraught and that there was reasonable basis for continuing emotional upset will often suffice); *Zuliani v. State,* 97 S.W.3d 589, 596 (Tex.Crim. App.2003) (statement made twenty hours after assault on victim was excited utterance because victim had been with her attacker during entire period and victim was clearly still very upset and under influence of attack). We hold the trial court did not abuse its discretion by admitting the excited utterance described by Officer Kemp.

### C. 911 Call

■ Appellant contends the trial court erred by admitting the second 911 call made by Kelly. The first 911 call occurred when she used a bystander's cell phone as she ran from the scene at the end of the chase. That call was not offered into evidence at the trial and the record does not show the contents of the conversation. The second 911 call was made when she arrived at her apartment three blocks away from the scene of the offense. This call was made before Detective Kemp met appellant at her house. Appellant points out that this was the only item of evidence asked for by the jury during its deliberations.

■ Appellant suggests on appeal that the admission of the 911 call violates the Confrontation Clause of the United States Constitution, but that argument is waived because he failed to object on that basis at trial. *See Blue v. State,* 41 S.W.3d 129, 131 (Tex.Crim.App.2000). Appellant's sole objection at trial was hearsay. In response, the State relies on the excited utterance exception claiming that the recording itself shows Kelly was still under the stress of the startling event as she was

relating her location so that she could receive assistance from the police. As we explain above, Officer Kemp, who saw Kelly about an hour after the event, described her as very shaken, very upset, scared, excited, and crying. Furthermore, we have listened to the 911 call. Kelly's voice is quivering and she sounds very upset, scared, and excited. We conclude the trial court did not abuse its discretion by determining the statements in the 911 call were excited utterances. *See id.* at 132; *Zuliani,* 97 S.W.3d at 596. We hold the trial court did not abuse its discretion by admitting the 911 call. We overrule appellant's second and third issues.

### Consideration of Lesser Offense Without Acquittal of Greater Offense

■ In his fourth issue, appellant contends the trial court's response to the note received from the jury during deliberations constituted harmful, reversible error. The trial court answered the jury's question by telling the jury it did not have to unanimously acquit of the greater offense before considering the lesser offense.

Article 37.07 of the Code of Criminal Procedure provides that "[i]f the jury fails to agree on the issue of guilt or innocence, the judge shall declare a mistrial and discharge the jury, and jeopardy does not attach in the case." Tex.Code Crim. Proc. Ann. art. 37.07 (West 2008). Unanimous verdicts are the final decisions of a jury, delivered to the court after its deliberations are complete. *Id.* art. 37.01 ("A 'verdict' is a written declaration by a jury of its decision of the issue submitted to it in the case."). Here, the jury unanimously found appellant guilty of attempted aggravated assault. Appellant, however, contends the jury should have unanimously acquitted him of aggravated assault before

it could consider attempted aggravated assault.

In making decisions such as the method of discussion, speaking order, and the like, the jury is left to its own devices. *Barrios v. State*, 283 S.W.3d 348, 352 (Tex.Crim.App.2009). "So, too, is the order in which the parts of the jury charge are considered left to the discretion of the jury." *Id.* The purpose of the law is to allow free discussion and interchange of opinions among jurors in order that proper verdicts may be rendered. *Id.* at 352–53 (citing *Caesar v. State*, 135 Tex.Crim. 5, 117 S.W.2d 66, 68 (1938)). They may consider the evidence in light of the entire charge read as a whole. *Id.* (citing *Boyett v. State*, 692 S.W.2d 512, 516 (Tex.Crim. App.1985)). "Therefore, even if, and perhaps especially if, the jurors cannot agree as to guilt on the greater offense, they have already been instructed that they may consider guilt as to the lesser offense before deciding on a verdict as to the greater offense." *Id.* at 353.

The trial court's answer to the jury here complies with the Court of Criminal Appeals's suggestion that it "may be that a better practice is for trial courts to include an instruction that explicitly informs the jury that it may read the charge as a whole, and to [include an instruction stating,] 'or if you are unable to agree, you will next consider' … so that the charge makes clear to the jury that, at its discretion, it may consider the lesser-included offenses before making a final decision as to the greater offense." *Barrios*, 283 S.W.3d at 353. The trial court's answer complies with the Court of Criminal Appeals's decision in *Barrios* that allows a jury to consider the lesser-included offense without having to first unanimously acquit of the greater offense. *See id.*

Appellant suggests that regardless of the *Barrios* decision, he was harmed by the purported inconsistency between the original written instructions that he contends required the jury to unanimously acquit of the greater offense as compared to the court's answer to the jury question that did not have that requirement. The written instructions, however, did not expressly require a unanimous acquittal of the greater offense. Instead, the jury instructions told the jury to find appellant guilty of aggravated assault unless it had a reasonable doubt about his guilt and if it did have a reasonable doubt, to next consider attempted aggravated assault. The original written charge was silent on whether the jury had to be unanimous in acquitting appellant of the greater offense. The jury's question asking for clarification about whether it had to unanimously acquit him of aggravated assault demonstrates that the instruction was unclear about this matter. We conclude that the trial court's answer to the jury's note was not inconsistent with its earlier written instructions and that it properly described the applicable law. *See id.* at 351–53. We overrule the fourth issue.

### The Verdict Form in the Jury Charge

In his fifth issue, appellant contends the trial court erred by including a verdict form inconsistent with article 37.07(1)(c) of the Code of Criminal Procedure. Appellant suggests two verdict forms should have been submitted so that in one the jury would find appellant guilty or not guilty of aggravated assault and in the other the jury would find him guilty or not guilty of the lesser-included offense of attempted aggravated assault. The State responds that article 37.07(1)(c) is inapplicable.

Section 37.07(1)(c) states, "[I]f the charging instrument contains more than one count or if two or more offenses are consolidated for trial pursuant to Chapter 3 of the Penal Code, the jury shall be instructed to return a finding of guilty or not guilty in a separate verdict as to each

count and each offense submitted to them." TEX.CODE CRIM. PROC. ANN. art. 37.07(1)(c). This section is an exception to the requirement for a general verdict. *Id.* at art. 37.07(1)(a). A single indictment may contain two or more offenses with each offense stated in a separate count if the offenses arise out of the same criminal episode. *Id.* at art. 21.24(a). A count may contain as many paragraphs charging the same offense as necessary, but no paragraph may charge more than one offense. *Id.* at art. 21.24(b).

Here, the indictment charged appellant with a single offense of aggravated assault and its lesser-included offense of attempted aggravated assault. *See* TEX.CODE CRIM. PROC. ANN. art. 37.09(4). "In a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense." *Id.* at art. 37.08. Furthermore, the Code provides that if a defendant is prosecuted for an offense that includes within it lesser offenses and he is convicted of an offense lower than that for which he is indicted, the verdict upon the first trial shall be considered an acquittal of the greater offense. *Id.* at art. 37.14. Because appellant was not charged with separate counts and no separate offenses were consolidated for trial, article 37.07(1)(c) is inapplicable. *See id.* at art. 37.07(1)(c). We hold the trial court properly instructed the jury to opt between aggravated assault, attempted aggravated assault, and not guilty in a single general verdict form. *See id.* at art. 37.07(1)(a). We overrule the fifth issue.

### Conclusion

We affirm the judgment of the trial court.