**Affirmed and Memorandum Opinion filed April 16, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00921-CR

**MARQUE JAMAL COLEMAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 1347307**

## M E M O R A N D U M   O P I N I O N

Following a jury trial, appellant Marque Jamal Coleman was found guilty of the second degree felony offense of robbery. Coleman pleaded true to two enhancements and the trial court assessed punishment at thirty years' imprisonment. In this appeal, Coleman contends that the trial court erred in not submitting the lesser included offense of theft from a person in the jury charge and by not granting a mistrial after a police officer stated that Coleman's photo was

taken from a "gang tracker" database. We affirm.

## BACKGROUND

On April 28, 2012, at approximately 1:45 a.m., Hortensia Garza was leaving HEB where she worked as a night stocker. Garza arrived home to her apartment complex located at 9550 Long Point Road, Houston, Texas. Garza parked her car, grabbed her items, and began walking toward her apartment. When Garza was about five feet away from her apartment, she saw a man walking in her direction. Garza believed that the man was a resident of the apartment complex so she smiled at him. As the man passed by Garza's left side, he grabbed her backpack from her shoulder. Garza and the man fought over the backpack for approximately thirty seconds until the man shoved Garza in the face with the palm of his hand. Garza fell to the ground, hit her head, and broke her finger. The man grabbed the backpack, ran, and jumped into a vehicle. Garza's backpack contained her wallet, driver's license, debit card, flex-pay card, and headphones.

Garza screamed throughout the duration of the struggle and a security guard appeared. By the time the security guard arrived, the man had taken off in the vehicle. Garza saw the vehicle attempt to exit the apartment complex, but the gate was locked. Officer Brian Foley arrived at the scene at 2:11 a.m. and interviewed Garza and the security guard. Garza described the man as a black male, between the ages of twenty and twenty-five, with a short black afro. Garza also stated that the man was wearing a black shirt and red shorts. A green GMC Yukon was discovered at another area of the apartment complex. The Yukon had crashed into a corner apartment and had been abandoned. The Yukon was towed to the police storage lot.

On April 30, 2012, the case was assigned to Officer Spivey. Officer Spivey ran the license plate from the Yukon discovered at the scene and found that it was

2

registered to Almador Juanes. At the time, Juanes was already contacting the police in order to obtain his vehicle from the tow lot. Officer Spivey spoke to Juanes and learned that on the night of the incident, Juanes loaned his vehicle to his friend, Blanca Diaz. Based on this conversation, Officer Spivey also discovered that a man named "Que" was with Diaz when Juanes loaned her the vehicle. Officer Spivey then ran a check on Diaz to see who she was associated with or whether she had a boyfriend and found Coleman's name.

Officer Spivey developed a photo spread, using Coleman's photo from a database along with five other black males' photos. Officer Spivey contacted Garza and drove to her family member's home, where she was residing at the time. When Officer Spivey showed Garza the photo spread, she said "that is him" within seconds and became very emotional. Garza selected Coleman's photo from the spread and identified him as the man who robbed her. Garza became upset and repeatedly told Officer Spivey "that is him." At trial, Garza testified that when Coleman was two feet away from her, she clearly saw his face. Garza stated that when she identified Coleman from the photo spread, she was 100 percent sure it was him and that there was no doubt in her mind. Garza further testified that it was easy to identify him.

Officer Spivey showed the same photo spread to Juanes, who identified Coleman as the man he knew as "Que." Juanes also identified Coleman as the person he saw in the passenger side of his vehicle with Diaz the night he loaned his Yukon to her.

On May 17, 2012, Coleman was indicted for the second degree felony offense of robbery, enhanced by two prior felony convictions. Tex. Penal Code § 29.02(a)(1); *Id*. § 29.02(b). The jury found Coleman guilty as charged in the indictment. At the punishment stage, Coleman pleaded true to both of the State's

3

punishment enhancement allegations. On September 25, 2013, the trial court found the enhancement allegations to be true and sentenced Coleman to thirty years' imprisonment. Coleman filed a motion for new trial on October 11, 2013, which was overruled by operation of law.

**ISSUES AND ANALYSIS**

On appeal, Coleman contends that the trial court erred in refusing his requested jury instruction on the lesser included offense of theft from a person. Coleman also asserts that the trial court erred in denying his motion for mistrial when Officer Spivey testified that she retrieved Coleman's photo from a gang tracker database.

## I.    Lesser Included Offense

In his first issue, Coleman argues that the trial court erred in failing to charge the jury on the lesser included offense of theft from a person.

We apply a two-prong test when determining whether a defendant is entitled to an instruction on a lesser included offense. *State v. Meru*, 414 S.W.3d 159, 162 (Tex. Crim. App. 2013); *see also Rousseau v. State*, 855 S.W.2d 666, 672−73 (Tex. Crim. App. 1993); *Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981) (op. on reh'g). We first consider whether the offense contained in the requested instruction is a lesser included offense of the charged offense. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011). If so, we must decide whether the admitted evidence supports the instruction. *Id*.

The State concedes that in this case, theft from a person can be a lesser included offense of robbery. *See Earls v. State*, 707 S.W.2d 82, 84−85 (Tex. Crim. App. 1986) ("Theft, by whatever method committed, is necessarily included in the alleged elements of the greater offense of robbery, when, as in the instant case, the

indictment alleged 'in the course of committing theft.'"). Thus, we need only address the second prong in our analysis to determine whether the admitted evidence supports the instruction.

The evidence supports an instruction on a lesser included offense if it permits a rational jury to find the defendant guilty only of the lesser included offense. *Goad*, 354 S.W.3d at 446. There must be some evidence directly germane to the lesser included offense for the factfinder to consider before an instruction on the lesser included offense is warranted. *Id*. We review all of the evidence presented at trial in making this determination. *Id*. The evidence must establish that the lesser included offense is a valid, rational alternative to the charged offense. *See Segundo v. State*, 270 S.W.3d 79, 91 (Tex. Crim. App. 2008). Anything more than a scintilla of evidence is sufficient to entitle a defendant to the lesser included offense instruction.[1] *See Goad*, 354 S.W.3d at 446. In making this determination, we may not consider "[t]he credibility of the evidence and whether it conflicts with other evidence or is controverted." *Id*. at 446−47 (quoting *Banda v. State*, 890 S.W.2d 42, 60 (Tex. Crim. App. 1994)).

The offense of robbery requires proof that a defendant intentionally, knowingly, or recklessly caused bodily injury to another. Tex. Penal Code § 29.02(a)(1). The offense of theft from a person does not require proof of this element. *See* Tex. Penal Code § 31.03(a) (providing that a person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property").

---

[1] The test for determining whether evidence is legally sufficient and the test for determining whether to submit a lesser included offense jury instruction are "quite different." *Dixon v. State*, 358 S.W.3d 250, 257 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (quoting *Wasylina v. State*, 275 S.W.3d 908, 909 (Tex. Crim. App. 2009)). The evidence could easily be legally sufficient to support a conviction for a lesser included offense but not justify the submission of a lesser included offense instruction because the evidence does not show that the defendant is guilty only of the lesser included offense. *Id*. at 258.

To be entitled to a reversal, Coleman must show some evidence in the record that would have permitted a rational jury in his case to find that he was guilty only of theft from a person.

Coleman argues that he was entitled to a jury instruction on the lesser included offense of theft from a person because there was some evidence in the record that he shoved Garza in the face without "intentionally, knowingly, or recklessly" causing her bodily injury. *See* Tex. Penal Code § 29.02(a)(1). Specifically, Coleman argues that there is evidence in the record that (1) Garza fell because of her size and weight; (2) he intended it to be a quick theft; and (3) he pushed her instead of using a fighting tactic.

The evidence of how the offense occurred came from the testimony of Garza, who testified that Coleman shoved her face with his palm in an attempt to steal the backpack when they were struggling over it. Garza testified that the shove caused her to fall to the ground, where Garza fell on her head and broke her finger.

Coleman directs this court to Garza's testimony in which she "attributed the result of falling to the ground to the fact she was short and had 'some weight on me.'" Coleman alleges that he did not intend to break Garza's finger or force her to fall because her testimony reflected that she fell because of her height and weight, rather than his forceful shove. However, there is no evidence that Garza attributed her fall to anything other than Coleman shoving her backwards. At trial Garza actually stated, "I am short, but I got some weight on me. In order to knock me down, you have to push me hard." Garza's testimony reflected that she fell to the ground and broke her finger because Coleman shoved her in the face with his palm in order to retrieve the backpack. Garza's testimony only speaks to causation, not

6

Coleman's mental state as to whether he intended to cause Garza bodily injury.[2]

Coleman further asserts that he did not intend to cause Garza bodily injury because he intended for it to be a quick theft which was evidenced by how quickly he fled the scene on foot. Coleman also argues that he did not act with the requisite mens rea because he pushed her in the face, instead of using a "'piledriver' blow or a leg-tipping maneuver, such as a fighting tactic."

Coleman's evidence does not provide any evidence that would permit a rational jury to believe he committed the robbery without intentionally, knowingly, or recklessly causing Garza bodily injury. *See Nguyen v. State*, No. 14-11-00706-CR, 2012 WL 3043063, at *3 (Tex. App.—Houston [14th Dist.] July 26, 2012, pet. ref'd) (mem. op.) (not designated for publication) (holding that defendant was not entitled to a lesser included offense instruction because the evidence showed that he acted intentionally, despite claiming that "he never intended to harm the complainant"). Therefore, the evidence does not support the conclusion that if Coleman is guilty, he is guilty of only theft from a person.

Because there is no evidence in the record that would permit a jury rationally to find that if he is guilty, he is guilty only of the lesser included offense of theft from a person, the trial court did not err in denying Coleman's requested lesser included offense instruction.

We overrule Coleman's first issue regarding the lesser included offense.

## II.    Motion for Mistrial

In his second issue, Coleman contends that the trial court erred in denying his motion for mistrial after Officer Spivey stated that Coleman's photo was taken

---

[2] Coleman does not dispute causation and admits that "[i]f the only question was causation, then it fairly could be said the Coleman's action caused the broken finger, which is a 'bodily injury.'"

from a gang tracker database.

While on redirect, the prosecutor asked Officer Spivey what evidence, other than the witness's identification, she used in order to make a final determination. In response, Officer Spivey stated, "[w]hen I found Que on the gang tractor [sic] system and it came back to Marque Coleman and such, just all the evidence." The defense counsel immediately objected to the comment and approached the bench. Outside the presence of the jury, defense counsel again objected. She asked the court to strike Officer Spivey's testimony, requested a jury instruction, and moved for a mistrial. The court sustained the objection, but denied the motion for a mistrial. When the jury was brought back into the courtroom, the judge immediately stated "[t]he jury is instructed to disregard that portion of the last answer."

The denial of a motion for mistrial is reviewed for abuse of discretion. *Trevino v. State*, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999). We view the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). A trial court does not abuse its discretion when its decision is within the zone of reasonable disagreement. *See id.*; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

A mistrial is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Ocon*, 284 S.W.3d at 884. A mistrial halts trial proceedings when the error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Id*. Whether an error requires a mistrial must be determined by the particular facts of the case. *Id*.

Generally, any error resulting from improper testimony is cured by an instruction to disregard the same except in extreme cases where it appears that the

8

evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds. *McKay v. State*, 707 S.W.2d 23, 36 (Tex. Crim. App. 1985). In most instances, an instruction to disregard the remark will cure the error. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). "Only offensive or flagrant error warrants reversal when there has been an instruction to disregard . . . ." *Id*. at 116.

After Officer Spivey mentioned that Coleman's photo was taken from a gang tracker database, defense counsel immediately objected and asked to approach. The jury was removed from the courtroom and upon returning, the trial court sustained defense counsel's objection and promptly instructed the jury to disregard the remark. We presume that the jury followed the trial court's instruction to disregard. *Id*. Although Officer Spivey mentioned that the photo was taken from a gang tracker database, her testimony was immediately cut off by the defense counsel. Officer Spivey did not provide any detail as to which gang Coleman was affiliated with nor did she expand on any information surrounding the gang tracker database. After Officer Spivey's testimony, the gang tracker database was never mentioned again at trial.

We cannot say that Officer Spivey's statement was so offensive or flagrant as to warrant the drastic remedy of a mistrial. Further, the comment was not so offensive or flagrant that the trial court's instruction to the jury to disregard the statement was insufficient to cure any error. *See Bridgewater v. State*, 905 S.W.2d 349, 354 (Tex. App.—Fort Worth 1995, no pet.) (holding that any possible error from witness' statement of "[h]e's already said that I can't say the thing about gangs" was cured by trial court's instruction to disregard); *Villarreal v. State*, 821 S.W.2d 682, 686 (Tex. App.—San Antonio 1991, no pet.) (stating that the

prosecutor's mentioning of defendant being in a gang during the guilt/innocence phase of trial was cured by the court's instruction to disregard the statement). The trial court did not abuse its discretion in denying Coleman's motion for a mistrial.

We overrule Coleman's second issue regarding the motion for mistrial.

## CONCLUSION

We overrule both of Coleman's issues and affirm the judgment of the trial court.


/s/    Ken Wise
            Justice


Panel consists of Justices McCally, Brown, and Wise.
Do Not Publish — TEX. R. APP. P. 47.2(b).