

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00176-CR

_____

QJUAN TIAKEI HOLMES A/K/A QUAN TIAKEI HOLMES, Appellant

V.

THE STATE OF TEXAS

_____

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1506417D

_____

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Qjuan Tiakei Holmes a/k/a Quan Tiakei Holmes appeals his conviction for capital murder. Holmes complains that the trial court erred in admitting the audio content of a 911 telephone call because it was irrelevant, it constituted improper character-conformity evidence, its prejudicial effect substantially outweighed its probative value, and the State failed to provide adequate notice of its intent to use the evidence. Because Holmes did not preserve his relevance, character-conformity, and prejudice complaints—and because the content of the 911 call was contextual to the charged offense and thus did not require prior notice from the State—we overrule Holmes's complaints and affirm the trial court's judgment.

## I. Background

Angela Gagne lived in a duplex in southwest Fort Worth. She met Holmes on Facebook, and he eventually moved in with her..

On June 4, 2017, someone placed a 911 call from a phone number associated with Gagne's address. The caller said that she had been assaulted and wanted to press charges. The call ended abruptly when she said "Bye, bitch," presumably to someone in the room with her.

Xondadric Holmes is Holmes's brother. In a series of communications with Xondadric on Facebook, Holmes told his brother that Gagne was "trying to set [him] up," that she was trying to send him to jail, and that Gagne was generally trying to "get" him. On the day before Gagne's death, Holmes told Xondadric in this same

series of messages that he did not feel comfortable without his gun and that he wanted his brother to bring it to him.

Cortez Simms looked up to Holmes as a father figure. He was living with Holmes and Gagne in 2017, mostly in the garage. On the evening of June 10, Simms came home from work and fell asleep on a couch in the garage. Xondadric opened the exterior garage door and walked in, and Holmes came into the garage from the interior garage door. Holmes went back inside the house for a few minutes and then returned to the garage saying, "I got to get out of here, she's crazy."

Gagne then came into the garage, naked, but wrapped in a blanket. She said to Holmes, "I love you. Why are you treating me like this[?]" Holmes told Simms and Xondadric that Gagne was "crazy" and that they should start videorecording her. Holmes pushed Gagne in her face and shoved her back into the house. He dragged her by her hair to the spare bedroom. Gagne protested, saying, "I never did nothing wrong to you." Holmes then told Xondadric to bring him a gun. Holmes warned Xondadric that there were cameras, so Xondadric knocked over one of them and went to the car to retrieve a gun. He brought back something wrapped in a shirt. He gave that shirt to Holmes who in turn went back to the spare bedroom.

Holmes returned to the garage and told Xondadric to "get the TVs." Xondadric did so. Holmes also told Xondadric to find some money. Xondadric went into Gagne's room and came back saying he could not find any money. Holmes gave

Xondadric the gun and had him guard Gagne while he looked for money, telling Xondadric to shoot Gagne if she moved.

Holmes could not find the money either. Xondadric threatened to kill Simms if he did not help put a television in the car. By this time, Holmes was back with the gun in the spare room with Gagne. Simms could hear Gagne say, "Why are you doing me like this?" Holmes pistol-whipped Gagne and told Simms to get his things and get out of the house. Simms went into the room where Gagne was and saw that she had blood on her face. Simms heard a gunshot. Xondadric was in the garage with Simms when the shot rang out. Simms had earlier phoned an acquaintance to come pick him up. Holmes said to Simms, "If you tell anybody, I'll kill you." When his ride arrived, Simms loaded his things, got in the car, and left. As Simms and his friend pulled away, Simms heard another gunshot.

After selling some of Gagne's things, Holmes bought a bus ticket under an assumed name and went to Florida. Gagne's body was discovered by police after her daughter requested a welfare check at Gagne's residence. She died from four gunshots to her head.

Holmes was indicted for the capital murder of Gagne based on the alternative aggravating factors of robbery and retaliation. Tex. Penal Code Ann. § 19.03(a)(2). He was convicted of capital murder by a jury and sentenced to life in prison.

## II. Holmes's Complaints About the 911 Assault Call

In one issue, Holmes argues that the recording of a 911 telephone call should not have been admitted by the trial court because it was irrelevant, it was more prejudicial than probative, it constituted inadmissible character-conformity evidence, and because the State failed to timely give him notice of its intent to use the evidence at trial.

### A. Preservation

Relying on Rules 401, 403, and 404(b) of the Texas Rules of Evidence, Holmes claims that the trial court erred in admitting the recording of the 911 call. *See* Tex. R. Evid. 401, 403, 404(b). We hold that he did not preserve these claims.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Because it is a systemic requirement, this court has a duty to ensure that a claim is properly preserved in the trial court before we address its merits. *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020).

Holmes claims that he objected to the 911 call "pursuant to Texas Rules of Evidence 403, 404(b), and general relevance as defined by Rule 401." The State responds that Holmes is mistaken—his objections were to a Facebook exchange, not the 911 call. We agree with the State. Holmes's only objection to the 911 call was to

the lack of notice from the State that is required by the Rules of Evidence. Because Holmes did not object to relevance, the 911 call's substantially prejudicial effect, or its potential as character-conformity evidence, we hold that those complaints are unpreserved. *See Dixon v. State*, 358 S.W.3d 250, 261 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (holding that defendant failed to preserve claim that recording of 911 call was erroneously admitted at trial).

### B. State's Failure to Provide Notice

Holmes did, however, preserve his claim that the State failed to provide adequate notice of its intent to use the recording of the 911 call at his trial. Holmes relies on the notice provision of Rule 404(b). Tex. R. Evid. 404(b)(2).

The notice requirement of Rule 404(b) provides that, upon timely request by the accused, the prosecution must give the accused reasonable notice in advance of trial of its intent to use extraneous offense evidence during its case-in-chief. *Id.*; *see also Hernandez v. State*, 176 S.W.3d 821, 822 (Tex. Crim. App. 2005). The purpose of the notice requirement is to avoid unfair surprise to the defendant and to enable him to prepare to answer the extraneous misconduct evidence. *See Hernandez*, 176 S.W.3d at 825; *Burgess v. State*, No. 02-12-00407-CR, 2014 WL 70090, at *4 (Tex. App.—Fort Worth Jan. 9, 2014, pet. ref'd) (mem. op., not designated for publication). An exception to this notice requirement is when the evidence arises from the "same transaction." Tex. R. Evid. 404(b)(2); *see McDonald v. State*, 179 S.W.3d 571, 577 (Tex.

6

Crim. App. 2005) (analyzing Rule 404(b) notice exception as "same transaction contextual evidence").

Holmes was indicted, in part, for committing the murder of Gagne in the course of committing retaliation. The State's retaliation theory of the case was that Holmes beat up Gagne six days before her murder, Gagne called 911 to report the assault, and Holmes killed Gagne because she reported it. The jury is entitled to know all relevant surrounding facts and circumstances of the charged offense. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). When an act is "so intermixed or connected" with the charged offense "as to form a single, indivisible criminal transaction, such that in narrating the one, it is impracticable to avoid describing the other," it constitutes contextual evidence. *McDonald*, 179 S.W.3d at 577; *Rogers v. State*, 853 S.W.2d 29, 33–34 (Tex. Crim. App. 1993). Here, there is no practicable way to describe a murder committed for the purpose of retaliation without describing the basis of the retaliation—that is, an assault committed by the defendant and reported by the victim. Admitting the audio of the 911 call was necessary to the jury's understanding of the offense, Holmes's state of mind, and his motive in committing the crime. The trial court did not abuse its discretion in finding that the assault forming the basis of the alleged retaliation was contextual to the charged offense—and therefore not subject to the notice requirements of Rule 404(b)(2). *See Shahzada v. State*, No. 05-17-00391-CR, 2018 WL 6322112, at *5 (Tex. App.—Dallas Dec. 4, 2018, pet. ref'd) (mem. op., not designated for publication) (holding that State was entitled

to explore reason for defendant's arrest where defendant was prosecuted for retaliating against officer because of that arrest).

We overrule Holmes's complaint about lack of notice.

### III. Conclusion

Having overruled Holmes's complaints concerning the 911 telephone call, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 17, 2023

8